60689, 60690. CHASTAIN v. FUQUA INDUSTRIES, INC. et al. (two cases).

DEEN, Chief Judge.

These cases were tried together. They involve Allen Chastain, an 11-year-old plaintiff who was injured by a partial amputation of his foot when the seat came off a riding power mower he was operating, and resultant damages sought by Samuel Chastain, his father. The named defendants were McDonough Power Equipment, Inc., the manufacturer (a subsidiary of defendant Fuqua Industries, Inc.) Chatsworth Cabinet & Supply Company, Inc., the retailer of the power mower; Stovall of Chattanooga, Inc., a distributor; J. A. Fox, Allen's grandfather and purchaser of the mower, and his aunt, Fanny Cochran. Eventually Cochran's motion for summary judgment was granted; Fox's motion for directed verdict was granted, and the jury returned a verdict in favor of the other defendants.

The evidence established that Allen's mother and aunt were twin daughters of Fox and the families all lived next door to each other. Allen's father had a power mower which Allen had used for about three years at the time of the injury. The previous fall, in

September of 1975, Fox purchased a riding mower for use on his own premises; previous to that time Allen and his aunt, Fanny Cochran, had taken turns mowing Fox's property with a push mower. After this purchase Mrs. Fox, Allen's grandmother, started paying him a nominal sum when he did this chore. Allen used the mower two or three times and his aunt once during the fall of 1976. In the spring of 1977 he used it a couple of times. About a week before the injury Fanny Cochran again used the apparatus and felt the seat slip slightly under her. She examined it but it seemed tight; she intended to tell Allen but forgot to do so. The next time he rode the mower the seat unexpectedly fell off while he was making a turn, throwing him to the ground. One foot became tangled with the mower blades and about half of it was amputated.

The mower in question was delivered, packaged by McDonough, to Stovall and by it transferred unopened to Chatsworth. Chatsworth had two employees who customarily assembled the mowers; one of these had attended a "seminar" organized by Stovall; both were experienced. At the trial of the case there was evidence tending toward an explanation of the incident on the basis that all the various bolts and washers used in the mower assembly were contained in a single plastic envelope; that there was one bolt and one internal tooth lock washer intended for use to attach the seat to a spring bar. The seat, becoming detached, was lying on the ground next to the mower. Samuel Chastain examined the area thoroughly and found the bolt lying in the grass. No washer was ever found. Expert testimony illustrated by enlarged photographs of the bolt and seat metal surfaces was to the effect that the wear of the surfaces involved indicated that no washer had ever been used in this particular assembly and that without the lock washer it might be expected that the bolt would eventually work free; this was, of course, contradicted by other testimony offered by the defendants.

The enumerations of error are considered seriatim.

1. The grant of summary judgment to Fanny Cochran was proper. The negligence alleged against this defendant was that she failed to warn Allen, after feeling a movement of the mower seat, that it might be loose and therefore dangerous, and that her failure to realize this fact and act on it was a contributing proximate cause of the injury. Plaintiff's reliance on *Hardy v. Brooks,* 103 Ga. App. 124 (118 SE2d 492) (1961) is, however, misplaced. In that case the defendant *created* the situation which caused the plaintiff's misfortune by striking and killing a large cow while driving along the highway; his failure to remove the cow from the roadway or warn other motorists approaching over the brow of the hill was held to pose a jury question, and "if one by his own act, although without

negligence on his part, creates a dangerous situation in or along a public highway and it reasonably appears that other users of the highway in the exercise of ordinary care for their own safety may be injured by the dangerous situation so created, the one creating the same is under a duty to eliminate the danger or give warning to others of its presence." Under the fact situation here there is no suggestion that Fanny Cochran *created* the loosening of the bolt in the mower seat assembly. If she did not create the defect, had she any other relationship which would have placed on her a duty to protect or warn her nephew whom she knew was taking turns with her in using the mower for the benefit of their respective father and grandfather? So far as appears, Cochran was in the position of a volunteer, interested in aiding her father because of his age and incapacity. She had no contract with either party and no duty other than to avoid injuring them. An act, no matter how deleterious its consequences, is not actionable unless it violates the legal right of another. "[T]here can be no negligence where no duty is due the person injured, for negligence is the breach of some duty that one person owes to another . . . Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found." *Southern R. Co. v. Liley,* 75 Ga. App. 489, 493 (43 SE2d 576) (1947). To the same effect see *Hillinghorst v. Heart of Atlanta Motel,* 104 Ga. App. 731, 733 (122 SE2d 751) (1961). The evidence, however, being relevant to the condition of the mower, was admissible on the trial of the case, but was insufficient to show actionable negligence on the part of the defendant.

2. It was not error to direct a verdict in favor of the defendant Fox, owner of the mower. The evidence is clear that Fox never used or even examined the machine, although he with others went to the dealer to purchase it, and there is no contention that he knew or had reason to suspect any defect in its assembly. There is testimony that when the rider mower was provided instead of a push mower Mrs. Fox, Allen's grandmother, began paying him for the work, and Fox was aware that Allen was doing a part of the mowing because he sometimes sat on the porch and watched him. This may well be sufficient to constitute a master-servant relationship, and we are aware that as to children under the age of fourteen the ordinary care to be exercised by the employer may well be greater than if he were dealing with an adult. *Beck v. Standard Cotton Mills,* 1 Ga. App. 278 (57 SE 998) (1907); *Jordan v. Batayias,* 53 Ga. App. 538 (1) (186 SE 451) (1936). A child under the age of fourteen "assumes only such ordinary risks of his employment as he is capable of appreciating and understanding, and a master who, by himself or through an authorized agent, directs such a child to do an act which, if performed

according to the means and method provided by the master, would be attended with danger, owes the duty of warning him of the dangers incident to its performance, and in doing so must take into consideration the child's incapacity to appreciate and understand danger." *Moore v. Ross,* 41 Ga. App. 509 (3) (153 SE 575) (1930). Adjusted for age difference, the standard of care of Allen's grandfather considered as his employer is Code § 66-301 "to exercise ordinary care . . . in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto." The looseness of the bolt attaching the seat to the mower frame which allowed it to slip out and thus permit the seat to fall off was without question a latent defect. Fanny Cochran testified that after the seat "slipped" she examined it and it appeared tight and did not slip again. Allen rode the mower about seven minutes before the seat fell off and it did not slip during that time. The machine had been used not more than seven or eight times and appeared in top condition. Allen, by his own testimony, had worked with power mowers for about three years and was familiar with the way they were assembled; his grandfather had not and was not. The defect was latent and not under all the circumstances one to be guarded against at that time and place in the exercise of ordinary care. We find no fact question as to negligence on the part of Fox merely because of his legal status as owner.

3. "[E]vidence of subsequent repairs following an injury is not admissible on the trial of negligence cases, the usual purpose of such evidence being as a basis for drawing the inference that the defendant thereby impliedly admitted his realization of negligence. *Lacy v. City of Atlanta,* 110 Ga. App. 814 (140 SE2d 144); *Atlantic C. L. R. Co. v. Sellars,* 89 Ga. App. 293 (79 SE2d 35); *Flint River Cotton Mills v. Colley,* 71 Ga. App. 288 (30 SE2d 426); *Savannah, F. & W. R. Co. v. Flanagan,* 82 Ga. 579 (9 SE 471, 14 ASR 183)." *Flowers v. Slash Pine EMC.,* 122 Ga. App. 254 (3) (176 SE2d 542) (1970). To the same effect see *Stuckey's Carriage Inn v. Phillips,* 122 Ga. App. 681 (1) (178 SE2d 543) (1970); *White v. Seaboard C. L. R. Co.,* 139 Ga. App. 833 (2) (229 SE2d 775) (1976) and *Gunthorpe v. Daniels,* 150 Ga. App. 113 (1) (257 SE2d 199) (1979) which mention certain exceptions to the rule, such as when the subsequent repair, change, or modification tends to prove some fact of the case on trial (other than belated awareness of negligence, of course), to show contemporary knowledge of the defect, causation, a rebuttal of a contention that it was impossible for the accident to happen in the manner claimed, and so on. In this case

the manufacturer placed all nuts, bolts, washers, etc. together in a plastic envelope in the carrying box for use in assembling the machine. It was a contention of the plaintiff that the effect of several bolts and washers of different kinds jumbled together in one envelope might confuse a person whose duty it was to make the assembly, as proof of which they offered testimony that after this misfortune the manufacturer made another kind of seat bolt on which the washer was permanently installed. This of course fitted in with evidence that the bolt, if the washer were omitted, would tend to work loose over a period of time, but if properly assembled with the lock washer it could not do so unless tampered with. On objection the court inquired: "All right, and you offer this evidence not to show negligence but to show what?" to which counsel replied only that it would show their knowledge that this would likely have happened back at the time of manufacture. As we understand the reply, the evidence was offered to show negligence. We agree that it was inadmissible for this purpose and no other relevant purpose (including impeachment) occurs to us. The evidence was properly excluded.

4. Several of the defendants pleaded that the occurrence was due to accident not resulting from the negligence of anyone, and several requested a charge on this defense. We have examined the instructions given relating to "accident" in the legal sense and find them well phrased and appropriate to the evidence offered. The fact that the trial judge neglected to give the requested charge on this subject in the first instance and was forced to recall the jury for this purpose was not prejudicial in view of his instructions that "the court does not intend to emphasize this particular charge over any of the rest of them; I simply forgot to give it and I'll give it to you now and you can consider it along with all the other legal principles . . ." Examination of the record reveals that the original omission of this instruction was called to the court's attention by counsel for the appellants. This was done at the time exceptions to the charge were called for, and the plaintiffs' attorney made a number of objections, but did not object to the court's statement that he would supply the omitted instruction on accident, of which plaintiffs' attorney himself had reminded the court. One cannot complain of invited error. *Western & A. R. v. Fowler,* 77 Ga. App. 206 (47 SE2d 874) (1948); *Lumbermen's Underwriting Alliance v. Jessup,* 100 Ga. App. 518 (112 SE2d 337) (1959). And, since pure mechanical failure can never be totally proved nonexistent, we do not find this a case where the legal theory of accident is inappropriate, as where the evidence demands a finding that the injury resulted from the negligence of either the plaintiff or a defendant, as might be the case, for example, where at an intersection collision both sides admit that access is controlled by a

traffic light, and each contends that the other litigant ran the red light. No visible error appears here.

5. The seventh enumeration of error is without merit as the court succinctly instructed the jury that any negligence on the part of Sam Chastain would not be imputable to his son.

6. The motion for summary judgment of the retailer Chatsworth was sustained as to Count 2 of plaintiffs' petitions, seeking to base liability on a breach of implied warranty. Code § 109A-2—318 provides in part: "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty." We hold that the words "family or household" do not, because stated in the alternative, limit members of the family who may rely on the implied warranty to those who live within the household of the buyer, and the question then becomes whether the word "family" is limited to the nuclear family (spouse, minor children) or whether it can be given a more extended meaning. In this connection Code § 109A-1—102 specifies: "This Act shall be liberally construed and applied to promote its underlying purposes and policies," one of which, of course, is to broaden within the framework provided the protection of warranties beyond the original notion of privity of contract. In Miller v. Preitz, 422 Pa. 382 (221 A2d 320) (1966) UCC Sec. 2-318 was at issue. The court quoted from the section comments as expressly including the family, household, and guests of the purchaser. It then holds: "With respect to this inquiry, appellant contends that the decedent, being a nephew of the 'buyer' as that term is used in Section 2-318, [is], therefore, within the benefit of [the] implied warranty. The lower court held and appelles urge that the word 'family' was meant by the Legislature to be used interchangeably with the word 'household' and that since the decedent, who lived next door to his aunt [the purchaser] was not a member of her 'household' he could not be in her 'family.' In our opinion such a construction is erroneous. The word 'family' appears in the phrase 'any natural person who is in the family or household of his buyer or who is a guest in his home.' Obviously, the clause 'guest in his home' has significance different from and independent of the clause 'person . . . in the . . . household' rather than being mere surplusage. The use of the conjunction 'or' strengthens the natural conclusion that 'family' and 'household' have different meanings in this statute . . . In our opinion, considering the remedial nature of the provision and the natural connotations of the word, its meaning was not intended to be unduly restrictive. Accordingly, we hold that the

word 'family' as used in the statute includes the nephew of the purchaser, who lived next door and not in the owner's house.' " In Wolfe v. Ford Motor Co., 376 NE2d 143, 149 (Mass. 1978) the court, although noting that Miller v. Preitz, supra, had been overruled on other grounds, felt itself persuaded by the above analysis and held that a nephew of the buyer's household, was properly held to be "in the family" under an identical statute within the facts of that case. In Milbank Mut. Ins. Co. v. Proksch, 244 NW2d 105 (Minn., 1976) the court dealt with a daughter who had purchased a Christmas tree erroneously represented as fireproof, which was the cause of property damage to her father. This case may well involve people in the same household, but the court in its decision relied primarily on the "family" concept in allowing recovery, stating that "although some courts have indicated disagreement regarding the scope of this section, the bulk of the cases and comments squarely support a court's authority to expand the class of third-party beneficiaries beyond the face of the section."

Here the buyer and his wife were elderly people totally incapable of using a riding mower to cut the grass on their premises. The grass had been cut for some time by the plaintiff Allen and his aunt, the buyer's grandson and daughter respectively. The three households were located next door to each other. It was understood that the minor plaintiff and his aunt would be the persons using the mower for the benefit of the buyer, and from all the testimony it is a tenable assumption that it is precisely because these people were all members of the same family that the arrangements were made.

It was under these circumstances at least a jury question whether Allen was a member of the "family" of his grandfather and as such entitled to the benefit of the warranties of fitness and merchantability regardless of lack of privity and regardless of the fact that they were not of the same household. It was accordingly error to grant the partial motion for summary judgment of the defendant Chatsworth Cabinet and Supply Co. as to Count 2 of the petition based on implied warranty.

7. The defendant Stovall of Chattanooga has filed a cross appeal which, however, in view of the fact that the verdict and judgment are untouched as to this defendant, we dismiss as moot.

*Judgment affirmed in part and reversed in part. Birdsong and Sognier, JJ., concur.*

ARGUED SEPTEMBER 10, 1980 — DECIDED NOVEMBER 20, 1980 — REHEARING DENIED DECEMBER 5, 1980 —

*D. W. Mitchell, Jr.,* for appellants.
*Ben H. Weinberg, Joseph T. Tuggle, Jr., William W. Keith, III, Dennis D. Watson, L. Hugh Kemp,* for appellees.