A98A0963. THOMAS v. DEPARTMENT OF TRANSPORTATION
et al.
(502 SE2d 748)

BLACKBURN, Judge.

Karen Thomas was killed in an automobile accident at a Department of Transportation road construction site. The accident occurred when another car driven by 16-year-old Michael Oxenrider swerved into Thomas' lane and hit Thomas' vehicle head-on. Appellant Alma Yvonne Thomas, as guardian of Thomas' children, sued the DOT and others, contending that the accident was caused by the dangerous road conditions at the construction site.

Several days after the accident, another accident occurred at the same DOT site, injuring one of the drivers, Jane Studard.[1] The trial court granted the defendants' motion in limine to exclude evidence of this subsequent accident. The court also granted the defendants' motion in limine to exclude evidence of remedial measures taken after the second accident. After a non-jury trial, the trial court entered judgment for the defendants.

The accident in this case occurred just south of the intersection of Ga. 1 and Adams Road, an area that had been resurfaced shortly before the accident. Just north of the accident scene is a "transitional" area where two southbound lanes merged into a single lane at the same point where two northbound lanes merged into one lane. Oxenrider was heading southbound on Ga. 1 when he veered onto the unimproved right shoulder. As he attempted to return to his lane, he overcompensated and crossed over into the northbound lane, where he collided head-on with Thomas' automobile.

Plaintiff contended that Oxenrider saw Thomas' vehicle approaching him and believed that it was in his lane. Because the resurfacing had obliterated the white lines on the edge of the road, plaintiff claimed that Oxenrider was unable to determine his position

---

[1] This second accident was the subject of a separate lawsuit involving substantially the same issues as this case. See *Studard v. Dept. of Transp.*, 219 Ga. App. 643 (466 SE2d 236) (1995).

on the road and thus drove off onto the shoulder. Plaintiff contended that the accident was thus proximately caused by defendants' failure to provide adequate road markings and traffic control devices.

In its written order, the trial court found that Oxenrider had already passed southbound through the transitional area before he left the road, and that even plaintiff's expert conceded that no additional temporary pavement markings were required south of the transitional area "because there was no hazardous condition at that point." The court further noted that, although there were no white markings on the edge of the lane, there was a temporary centerline at the point Oxenrider left the road. The court found that Oxenrider "was aware of the broken temporary centerline which was reflective and thus, he had adequate guidance to maneuver his vehicle through the area." Oxenrider also testified that he would have moved his vehicle over to the right to get away from the oncoming vehicle even if there had been a white edge line. The court also noted that, just minutes before the accident, Oxenrider had traveled northbound on Ga. 1 through the accident scene before turning around and heading southbound. Oxenrider had also traveled through the area a couple of nights earlier, was aware of the resurfacing project, and was familiar with the road. Given all of these facts, the trial court found that plaintiff "has failed to show by a preponderance of the evidence that the absence of adequate temporary pavement markings and other traffic control devices was the joint and concurrent proximate cause of the accident."

1. In two enumerations, plaintiff contends that the trial court erred in excluding evidence regarding subsequent remedial measures. Plaintiff sought to introduce evidence that, after the second accident at the site, the DOT brought in a crew to paint white edge stripes on the road. The foreman of the crew was told to paint the stripes because a fatality had occurred at the site, although the DOT's standard policy was not to paint such stripes until the resurfacing project had been completed. In addition, the DOT placed additional traffic control signs throughout the project. The trial court granted defendants' motion in limine to preclude evidence regarding these remedial measures, and at trial held that plaintiff could not present such evidence as rebuttal evidence.[2]

As an initial matter, plaintiff has not shown that she was harmed by the exclusion of evidence of remedial measures. The trial judge sat as trier of fact in this case, the parties having waived their

---

[2] We note that this Court affirmed the exclusion of this exact same evidence in *Studard*, supra, the action arising out of the second accident at the DOT site. The trial court in this case recognized the similarities between the two cases and entered an order continuing this case until we ruled in the *Studard* appeal.

right to a jury trial. Evidence of the remedial measures was presented to the judge in connection with defendants' motion in limine. Therefore, the judge was aware of such evidence when she rendered her judgment in favor of defendants. In excluding such evidence, the judge expressed her conclusion that such evidence was not relevant to the issues at trial. As discussed above, the judge's decision was based on her conclusion that the absence of white lane markings and traffic control devices was not the proximate cause of the accident.

Moreover, the trial court did not abuse its discretion in excluding such evidence. "Evidence of subsequent remedial measures generally is inadmissible in negligence actions, because the admission of such evidence basically conflicts with the public policy of encouraging safety through remedial action, for the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence." *Royals v. Ga. Peace Officer Standards &c. Council*, 222 Ga. App. 400, 401 (1) (474 SE2d 220) (1996); see also *Chastain v. Fuqua Indus.*, 156 Ga. App. 719, 722 (3) (275 SE2d 679) (1980). "It is generally presumed that evidence of subsequent repair is submitted by plaintiffs for the purpose of showing that the defendant recognizes and admits his negligence." *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983).

There are certain exceptions to the general rule of exclusion, however, such as when the remedial action "tends to prove some fact of the case on trial (other than belated awareness of negligence, of course), to show contemporary knowledge of the defect, causation, a rebuttal of a contention that it was impossible for the accident to happen in the manner claimed, and so on. Such evidence may also be admitted where the feasibility of repair or modification is an issue." (Citation and punctuation omitted.) *Royals*, supra. "As with the issue of relevancy, the admission of remedial evidence under any reasonable and probative exception lies in the sound discretion of the trial court . . . and will not be reversed absent manifest abuse." (Punctuation omitted.) *Dept. of Transp. v. Cannady*, 230 Ga. App. 585, 588 (497 SE2d 72) (1998).

Plaintiff contends that evidence of remedial measures was admissible to rebut defendants' contention that the accident did not happen in the manner claimed, to rebut defendants' contention that the traffic control methods used were the safest possible, to show defendants' knowledge of causation, and to show defendants' knowledge of the dangerous condition of the roadway. Each of these contentions is without merit. Although defendants contend, and the court found, that the accident was not caused by the lack of white lane markings or other traffic control devices, they do not claim that it was impossible for the accident to have occurred because of such con-

ditions. Accordingly, evidence of remedial measures was not required to rebut a claim of impossibility. See *Chastain*, supra at 722. Defendants do not contend that the traffic control methods used were the safest possible, but that they were adequate under the circumstances. Thus, evidence of remedial measures was not necessary to rebut a non-existent claim. To say that the remedial measures undertaken by defendants show their "knowledge of causation" is but another way of saying that such measures show their "belated awareness of negligence," which is what the exclusion was designed to prevent. Id. Finally, the undertaking of remedial measures after the accident does not demonstrate that defendants had knowledge of any hazardous condition prior to the accident.

Under the circumstances, the trial court clearly could find that the real reason for seeking to introduce evidence of remedial measures was to try to show the defendants' awareness of their own negligence. Accordingly, we cannot say that the trial court abused its discretion in excluding such evidence.

2. Plaintiff also contends that the trial court erred in excluding evidence regarding the subsequent accident at the DOT site. "The relevancy of other occurrences and thus the admissibility of such evidence lies within the sound discretion of the trial court, and may have probative value if the conditions of the other occurrence are substantially similar and may explain the occurrence under examination by the jury." *Reed v. Heffernan*, 171 Ga. App. 83, 85 (1) (a) (318 SE2d 700) (1984).

The trial court did not abuse its discretion in excluding evidence of the second accident. The driver in that accident left the road on Ga. 1 north of the intersection with Adams Road, while the accident in this case occurred south of the intersection and outside of the transitional area. Defendants' expert admitted that the area south of the transitional area was not hazardous and did not require additional pavement markers. Moreover, the driver of the vehicle in the second incident fled the scene, and there was thus no evidence of why he left the roadway. Accordingly, the trial court was authorized to find that the two incidents were not sufficiently similar so as to establish the relevancy of the second accident.

Moreover, as with the evidence of remedial measures, plaintiff has not shown how she was harmed by the trial court's exclusion of this evidence. The judge was aware of the subsequent accident through an offer of proof, and concluded that it was not substantially similar to the present accident. It thus does not appear that admission of evidence regarding the subsequent accident would have changed the result in this case. Indeed, the judge's decision was based upon facts peculiar to this case showing that the lack of traffic control devices did not proximately cause the accident. Evidence of

the subsequent accident would not have changed the facts relied upon by the judge, and exclusion of such evidence thus did not constitute harmful error.

3. Plaintiff contends that the findings of fact by the trial court were against the greater weight of the evidence. Even if true, that would not be grounds for reversal of the trial court's judgment, as this Court does not weigh evidence. "In bench trials, the findings of the trial court will not be set aside unless clearly erroneous and regard must be given to the trial court's opportunity to assess the credibility of the witnesses. OCGA § 9-11-52 (a). Moreover, the 'clearly erroneous' test is in essence the same as the 'any evidence' rule and appellate courts cannot disturb the findings of fact by the trial court if there is any evidence to support them. As the trial court's findings of fact are supported by evidence in the record, [plaintiff's] arguments asking this court to interpret the evidence differently from the trial court are to no avail. Accordingly, [plaintiff's enumeration] of error alleging that . . . the judgment is against the weight of the evidence [is] without merit." (Citation omitted.) *Covrig v. Miller*, 199 Ga. App. 864, 865 (1) (406 SE2d 239) (1991).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED MAY 22, 1998.

*Mundy & Gammage, John S. Husser, Robert K. Finnell*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, C. Latain Kell, Senior Assistant Attorney General, Susan J. Levy*, for appellees.