A06A0402. WYNN v. CITY OF WARNER ROBINS.

(630 SE2d 574)

MIKELL, Judge.

Lorenzo Wynn suffered a defense verdict in his personal injury action against the City of Warner Robins ("the City") arising out of his

vehicle's collision with a fire rescue van. He appeals from the denial of his motions for new trial and judgment notwithstanding the verdict. We affirm.

1. Wynn argues that the trial court erred in denying his motion for a directed verdict and j.n.o.v. on the issue of liability. We disagree.

"A directed verdict is authorized only where the evidence, with all reasonable deductions and construed in favor of the nonmovant, demands a particular verdict. OCGA § 9-11-50 (a). Where there is 'any evidence' or 'some evidence' to support the nonmovant's claims, a jury issue is created and a directed verdict is improper."[1]

> The standard for granting motions for directed verdict and for j.n.o.v. is the same. They may be granted only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a particular verdict. On appeal, the standard of review is "any evidence." This court must therefore view the evidence presented at trial and determine whether some evidence supported the jury's verdict.[2]

Construed in favor of the verdict, the evidence adduced at trial shows that at approximately 4:50 p.m. on August 27, 1999, Perkins Nathan Nobles, a City firefighter and emergency medical technician, was driving a fire rescue van while responding to a 911 call when the van was struck by Wynn's vehicle at the intersection of Holly Street and Watson Boulevard. Nobles testified that he did not stop at a stop sign on Holly before reaching Watson and that he intended to turn left onto Watson. When he entered the intersection, he believed that all the cars had stopped. Nobles recalled that the light was red and that he slowed down as he approached the intersection to make sure it was safe to proceed. However, he could not remember whether he actually stopped; Nobles testified that he believed he was in a "rolling stop."

Nobles was accompanied on the 911 call by a fellow firefighter, Richard Michael Senter. Senter testified that the van's emergency lights and sirens were activated before they left the station. He explained that the emergency light was a large red bar that extended all the way across the top of the van. According to Senter, as he and Nobles approached the intersection, traffic was heavy, the light was red, and they had to stop for a couple of seconds to wait for a car to get out of their way. When he looked toward Nobles's side of the van,

---

[1] (Citation and punctuation omitted.) *Pryor v. Phillips*, 222 Ga. App. 116 (1) (473 SE2d 535) (1996).

[2] (Citation omitted.) *Republic Svcs. of Ga. v. Hoak*, 273 Ga. App. 330, 331 (615 SE2d 175) (2005).

Senter saw Wynn's car approximately 200 yards away. Senter then looked around to his side and to the front; he saw all the vehicles nearby either slowing down or stopping, so he told Nobles that the intersection was clear. Then Senter glanced back to Nobles's side again just in time to see Wynn's car strike the van.

Thomas Maurice Peacock, who witnessed the collision, testified that although his light had turned green, he had stopped on Watson when he heard the siren; that he saw the rescue van approach from Holly; that its emergency lights were illuminated and its siren was activated; and that when the van approached the intersection, the driver stopped for "at least about three seconds." When the driver began to proceed into the intersection, Peacock saw Wynn pass to his right and strike the van.

Wynn testified that the van pulled out right in front of him when he was almost under the green light. Wynn further testified that although he did not have a radio on, he did not hear any sirens or see any flashing lights prior to the impact.

State Trooper Bobby Mathis, who is now assigned to the Governor, responded to the scene of the accident and conducted an investigation. Mathis testified that the collision was caused by the rescue van driving into the path of Wynn's oncoming vehicle. He also testified that visibility was clear.

In moving for a partial directed verdict as to liability, Wynn argued that the City failed to show that Perkins was entitled to the privilege of proceeding through a red light pursuant to OCGA § 40-6-6, which provides in pertinent part:

> The driver of an authorized emergency vehicle . . . , when responding to an emergency call, . . . may exercise the privileges set forth in this Code section. . . . The driver of an authorized emergency vehicle . . . may: . . . [p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation; . . . [e]xceed the maximum speed limits so long as he or she does not endanger life or property; and . . . [d]isregard regulations governing direction of movement or turning in specified directions. . . . The exceptions granted by this Code section to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal and use of a flashing or revolving red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle.[3]

---

[3] OCGA § 40-6-6 (a), (b) (2)-(4), (c).

"The burden of proving the affirmative defense that the defendant is entitled to statutory exemptions from traffic regulations rests upon defendant, and in order that a defendant may claim exemptions applicable to emergency vehicles the conditions of the emergency[ ] vehicle statute must be met."[4] Here, Wynn argued that the City did not provide evidence that the red light atop the van was visible from a distance of 500 feet. In this regard, when Fire Chief Robert Marion Singletary was asked to estimate the distance from which the red lights would be visible, Wynn objected, and the court sustained the objection. Singletary then testified that the lights were working properly at the time of the accident and that they were "in compliance with Georgia law." On cross-examination, Singletary testified that he knew that Georgia law required that the lights be visible from 500 feet away and that he was certain that the lights in question satisfied this requirement because he had observed them on a regular basis. He also ascertained that the bulbs were working. This evidence is sufficient for the jury to have found that the lights were visible from a distance of 500 feet, in compliance with OCGA § 40-6-6. Since a judgment in favor of the City was not demanded, the trial court did not err in denying the motions for directed verdict and j.n.o.v. on the issue of liability.[5]

2. Wynn further contends that the trial court erred in failing to excuse juror number 47 for cause. This issue has been waived by Wynn's failure to obtain a ruling from the trial court on his motion.

The record shows that during voir dire, this prospective juror stated that prior to working for her church, she had been employed by a railroad for 30 years handling personal injury claims. When asked whether this left "a bad taste in [her] mouth about Plaintiffs," she replied: "Sometimes; yes." Wynn's counsel then inquired whether the prospective juror could "start out even and be honest and not put a heavier burden on him than he's got," and she stated that she thought she could. However, the prospective juror subsequently stated that she felt "very strongly" that she would place the burden on Wynn of proving his case beyond a reasonable doubt. Counsel then asked her: "Despite the Judge telling you that it's a preponderance of the evidence, you'd still feel like in your own heart you'd have to be proved

---

[4] (Citations omitted.) *City of Macon v. Smith*, 117 Ga. App. 363, 368-369 (1) (160 SE2d 622) (1968). Accord *Pryor*, supra at 117 (2).

[5] See generally *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 647 (522 SE2d 467) (1999) (error to grant j.n.o.v. where evidence for the defendant was not "plain, palpable, and indisputable," there was some evidence supporting the verdict of the jury, and all of the evidence did not demand a defense verdict). See also *City of Macon*, supra at 369 (1) (issue of whether ambulance driver was responding to an emergency call when accident occurred properly left as fact question for jury).

beyond a reasonable doubt?" She answered, "Yes." Based on that response, counsel moved to excuse her for cause. The City's counsel examined her:

> [O]nce you've heard all the evidence in this case about what happened, . . . the Judge is going to instruct you, and he's going to tell you the law that applies to the case. And he's going to tell you that the law that applies to this case is not the burden in a criminal case, beyond a reasonable doubt, but preponderance of the evidence. And as a juror in this case, you are required to adhere to that burden. . . . [G]iven your experience and what you know, . . . do you think that those experiences would affect your ability to be fair and impartial in this case?

The juror answered, "I think I could be fair."

The City's counsel further inquired: "Do you think, . . . after hearing all the evidence in this case[,] that you can follow the instructions by the Court, the instructions under the law, the instructions that the Plaintiff's burden in this case is by a preponderance of the evidence?" The juror answered, "Yes."

The court permitted Wynn's counsel to follow up, and he asked the juror whether she had changed her mind. She responded, "Well, I feel like I could be fair. I just . . . saw so many claims when I was at the railroad that I knew they would be out for money." Counsel asked whether the juror still thought that Wynn would have to prove his case beyond a reasonable doubt before she could find for him, and she said "Yes." Counsel moved again to excuse her for cause. The court stated: "I really think there's a problem here. . . . [W]e're having her express an opinion about something that she does not know the legal definition of." Wynn's counsel agreed with the court and read to the juror the pattern charge on preponderance of the evidence. After hearing the definition, the juror stated that she could apply the correct standard. Counsel asked her two final questions:

> [Counsel]: Do you promise me that after hearing this case you will be fair and impartial, and if you find that you're inclined towards Mr. Wynn, even though you still have doubt, you can find for Mr. Wynn?
> [The juror]: Yes.
> [Counsel]: We've got a contract?
> [The juror]: Yes.

After this final colloquy, counsel did not renew his motion to strike the prospective juror and did not obtain a ruling by the trial

court. Under these circumstances, we hold that Wynn has failed to preserve this issue for appellate review.[6]

3. Wynn additionally argues that the trial court erred in refusing to give his request to charge number 22B, which provides in part: "Defendant has the burden of proving that Defendant's driver was entitled to exercise certain privileges of an authorized emergency vehicle including proceeding past a red or stop signal." "In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge."[7] In the case at bar, the trial court charged the jury fully on OCGA § 40-6-6, including as follows:

> [T]he driver of an authorized emergency vehicle when responding to an emergency call may exercise the privileges set forth in [the] law. The driver of an authorized emergency vehicle may proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation. . . . Exceptions granted under Georgia law to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal and use of a flashing or revolving red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle.

The court further instructed the jury that the

> Defendant has the burden of proving that the Defendant's driver was operating an authorized emergency vehicle. The Defendant must prove . . . that the vehicle in question belonged to a fire department . . . that the vehicle was in use as an emergency vehicle. And, three, that it was being used by one authorized to use the vehicle for an emergency purpose.

Following this instruction, the court charged the jury concerning traffic control devices pursuant to OCGA § 40-6-20 (a): "The driver of any vehicle shall obey the instructions of an official traffic control

---

[6] See *Stephens v. State*, 255 Ga. App. 680, 683 (4) (569 SE2d 250) (2002). Compare *Elliott v. Home Depot U.S.A.*, 275 Ga. App. 865, 866-867 (1) (622 SE2d 77) (2005) (no waiver where, after two of nine challenged jurors were excused, plaintiffs' counsel did not withdraw objection to remaining jurors).

[7] (Punctuation and footnote omitted.) *Hefner v. Maiorana*, 259 Ga. App. 176, 177 (1) (576 SE2d 580) (2003).

device applicable thereto, placed in accordance with Georgia law, unless otherwise directed by a police officer, subject to the exceptions granted the driver of an authorized emergency vehicle under this Georgia law."

On appeal, Wynn argues that the trial court was required to charge the jury that it was the City's burden of proving that Nobles was entitled to disobey a traffic device, and that, had the court done so, the jury could have found that the City failed to meet the burden and that Nobles violated OCGA § 40-6-20 (a). In support of this contention, Wynn relies on *City of Macon v. Smith*[8] and *Pryor v. Phillips*.[9] Upon closer examination, however, neither case requires charging in the language requested by Wynn. As noted in Division 1, supra, both of those cases stand for the proposition that under OCGA § 40-6-6, the defendant bears the burden of proving that it is entitled to statutory exemptions from traffic regulations, and in order to claim the exemptions applicable to emergency vehicles, the conditions of the statute must be met.[10] In *Pryor*, we held that the trial court committed reversible error in charging the jury that it could have found that the defendant, a volunteer fireman, was operating an "authorized emergency vehicle" as defined in OCGA § 40-1-1 (5) because the fireman had admitted that the vehicle in question did not comport with the statutory definition.[11] Those circumstances do not exist in this case.

In *City of Macon*, it was undisputed that the ambulance was an authorized emergency vehicle and that its siren and light were in operation. The issue was whether the ambulance driver was "responding to an emergency call" within the meaning of the predecessor statute to OCGA § 40-6-6 when he was involved in a collision that killed the woman whom he was transporting to the hospital. The opinion notes that the record was silent as to the substance and nature of the decedent's call to the hospital,[12] and we held that the trial court did not err in refusing to give the city's requests to charge that would have effectively required the jury to find that the driver was responding to an emergency call and was entitled to statutory exemption from traffic regulations.[13] We held that the charges were improper and that the court "properly left it as a question of fact for the jury."[14]

---

[8] Supra.

[9] Supra.

[10] *Pryor*, supra at 117 (2); *City of Macon*, supra at 368-369 (1).

[11] *Pryor*, supra.

[12] *City of Macon*, supra at 368 (1).

[13] Id. at 367 (1).

[14] Id. at 369 (1).

Here, too, the court properly determined that the jury should decide whether the rescue van was an authorized emergency vehicle that complied with OCGA § 40-6-6. The trial court's instructions adequately informed the jury that the City had the burden of proof on this issue.[15]

4. Wynn further contends that the trial court erred in excluding from evidence an investigative report prepared after the accident by Nobles's supervisor, Lieutenant Scott Renfroe, and in refusing to permit Renfroe to testify concerning the report. The report contains three sections, captioned "What Happened? Why did it happen? What should be done?" In the "What Happened?" section, the supervisor wrote in part that "Rescue 3 slowed to a near stop and checked for cross traffic. Seeing everyone had stopped, they proceeded into the intersection to make a left turn. At this time a vehicle traveling west struck Rescue 3." In the "Why did it happen?" section, the supervisor wrote that "Nobles failed to make a complete stop at the intersection while checking for cross traffic. When he proceeded into the intersection, a vehicle who failed to yield the right of way to an emergency vehicle struck Rescue 3. . . . Rescue 3 had all visual as well as audible warning devices in operation." The "What should be done?" section advises further education for all firefighters on the dangers present when responding to emergency calls, including the need to exercise caution. Renfroe states in this section that he counseled both Nobles and Senter. The report was signed by Nobles, Renfroe, and the City's Human Resources Department Director; it was not signed by Senter. The City filed a motion in limine, in part to seek exclusion of the report on the ground that it constituted evidence of subsequent remedial measures.

> Evidence of subsequent remedial measures generally is inadmissible in negligence actions, because the admission of such evidence basically conflicts with the public policy of encouraging safety through remedial action, for the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence.[16]

At the hearing on the motion, Wynn argued that the portions of the report in which Renfroe states that Nobles "slowed to a near stop"

---

[15] Compare *Edmond v. Roberson,* 207 Ga. App. 101, 102 (1) (427 SE2d 74) (1993) (trial court's failure to give requested charge, which correctly quoted OCGA § 40-6-70, held reversible error because court did not charge the Code section at all).

[16] (Citations and punctuation omitted.) *Thomas v. Dept. of Transp.,* 232 Ga. App. 639, 641 (1) (502 SE2d 748) (1998). See also *Evans v. Dept. of Transp.,* 226 Ga. App. 74, 76-77 (3) (485 SE2d 243) (1997).

and "failed to make a complete stop" constituted admissions against interest. The trial court permitted Wynn to make an offer of proof, during which Renfroe testified that he filled out the form at the direction of the assistant chief, who explained to him the details of the accident as they had been explained to the assistant chief by Nobles. The assistant chief responded to the scene after the accident. Renfroe also testified that he later clarified the details with Nobles, but that he filled out the form before speaking with either Nobles or Senter. According to Renfroe, Senter told him that Nobles came to a complete stop and checked the intersection before proceeding. However, Renfroe did not modify his report because he wanted to present the "worse case scenario" to provide a better educational opportunity for the firefighters.

After hearing the offer of proof, the trial court ruled the report inadmissible because it was hearsay. The court further held that Renfroe's opinion as to the cause of the collision was not strictly objective, as a true investigative report should be, because it did not contain facts reported by witness Senter.

> [T]he admission of evidence is generally committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion. This is so because trial courts, unlike appellate courts, are familiar with a piece of litigation from its inception, hear first-hand the arguments of counsel, and consider disputed evidence within the context of an entire proceeding. Hence, it is only natural that an appellate court should defer to the trial court with regard to the admission of evidence, unless the lower court's decision is so flawed as to constitute an abuse of discretion.[17]

In the case sub judice, we discern no abuse of discretion in the trial court's exclusion of the portions of the report which recite that Nobles "slowed to a near stop" and that the accident happened because he "failed to make a complete stop." Wynn contends that these statements should have been admitted under the following Code sections: "Admissions by an agent or attorney in fact, during the existence and in pursuance of his agency, shall be admissible against the principal."[18] "The agent shall be a competent witness either for or

---

[17] (Punctuation and footnotes omitted.) *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001).

[18] OCGA § 24-3-33.

against his principal. His interest shall go to his credit. The declarations of the agent as to the business transacted by him shall not be admissible against his principal unless they were a part of . . . the res gestae, or else the agent is dead."[19] We have previously held, however, that "[t]he Code sections must be construed together, and the second effectively limits the scope of the first."[20] For example:

> The declaration of an employee tending to admit negligence which would be imputable to his employer made to an investigating police officer 45 minutes after the collision is not a part of the res gestae. Nor is it admissible in evidence as an admission against interest inasmuch as the employee is not a party to the litigation.[21]

In this case, the collision occurred at approximately 4:50 p.m. Although the report bears the military time "16:52," or 4:52 p.m., Renfroe testified that he did not finalize the report until after speaking with both the assistant chief and Nobles. It appears, therefore, that the report reflects the time the accident occurred, rather than the time of Nobles's conversation with Renfroe. Even if the statements at issue were part of the res gestae, they were inadmissible as admissions against interest because neither declarant was a party to the litigation.[22] Nobles had been dismissed prior to trial, and Renfroe was never named as a defendant.

Moreover, we note that the statement in the report that Nobles "came to a near stop" was merely cumulative of his testimony that he was in a "rolling stop." Therefore, Wynn cannot show harm from the exclusion of this portion of the report.[23] In any event, the state trooper had already testified that the collision was caused by the rescue van driving into the path of an oncoming vehicle. Finally, Wynn's argument that the report was admissible to impeach Senter's testimony that the van did stop before proceeding through the intersection is incorrect, given Renfroe's testimony that he purposefully excluded Senter's statement to that effect.

5. Finally, Wynn argues in his third, sixth, and seventh enumerations of error that the trial court erred in denying his motion for a

---

[19] OCGA § 10-6-64.

[20] (Citation and punctuation omitted.) Brooks v. Kroger Co., 194 Ga. App. 215, 216 (2) (390 SE2d 280) (1990). Accord Williams v. City of Social Circle, 225 Ga. App. 746, 748 (484 SE2d 687) (1997).

[21] (Citation and punctuation omitted.) Brooks, supra.

[22] See id.

[23] See Howard v. Lay, 259 Ga. App. 391, 394 (3) (577 SE2d 75) (2003) (to warrant reversal, appellant must show both an abuse of discretion and harm arising from the exclusion of evidence).

directed verdict and j.n.o.v. on the issue of the proximate cause of his neck injury, and in denying his motions for new trial and j.n.o.v. for the reasons set out in his other enumerations of error. Our holdings in Divisions 1 through 4, supra, render moot these remaining enumerated errors.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED APRIL 20, 2006

*Boston Passante, Russell M. Boston, Wendy S. Boston*, for appellant.

*Chambless, Higdon, Richardson, Katz & Griggs, John J. Makowski*, for appellee.