**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 18, 2023**

# In the Court of Appeals of Georgia

A23A1037. CHANDLER v. CITY OF LAFAYETTE.

MILLER, Presiding Judge.

This is the second appearance of this case before this court in this civil dispute stemming from a traffic accident. See *City of Lafayette v. Chandler*, 354 Ga. App. 259 (840 SE2d 638) (2020). In this appeal, James Lamar Chandler appeals from the trial court's order granting the City of Lafayette's ("the City") motion for summary judgment. Chandler argues that the trial court erred by (1) determining that the City met its burden of establishing that no genuine issue of material fact remained on his negligence claim; and (2) finding that he did not produce sufficient rebuttal evidence to create a genuine issue of material fact. After a close review of the record, we agree that genuine issues of material fact remain on Chandler's claim and that the trial court erred by granting the City's motion for summary judgment.

Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citation omitted.) *Giddens v. Metropower, Inc.*, 366 Ga. App. 15, 16 (880 SE2d 595) (2022).

So viewed, the record shows that in the early evening of October 27, 2016, Robert Lee Dennison, a firefighter for the City of Lafayette, was driving a fire truck on Villanow Street with the truck's lights and siren activated in response to an emergency call about a gas leak inside a residence. As Dennison approached a red light at the intersection of Villanow Street and GA-1, he slowed down "almost to a complete stop," and he sounded the truck's air horn to signal his presence to the other drivers in the area. According to Dennison, none of the other drivers in the area were moving at that time, he looked "both ways" to confirm that all of the vehicles in the area acknowledged his presence, and he "sat there for a good bit" before entering the intersection. He did not recall seeing Chandler's vehicle at this time. As Dennison traveled through the intersection, he again looked to his left and observed Chandler's

2

vehicle approaching the intersection from GA-1 and that his vehicle was a "fair distance" away from the fire truck. Chandler, who admitted to law enforcement that he was traveling between 55 and 60 miles per hour in the 45 miles per hour zone, attempted to get in front of the fire truck as it traveled through the intersection and "thought [that] [he] could get around [Dennison]." Chandler ultimately collided with the left side of the fire truck and suffered various injuries.

Multiple witnesses at the scene gave statements to law enforcement regarding the accident. Although the accounts varied as to whether the traffic signal was red or green when Dennison entered the intersection, all of the witnesses agreed that Dennison "slowed down and almost stopped before entering the intersection." Brian Boggess, a mechanical engineer retained by the City, concluded that Chandler would have first observed the fire truck from at least 500 feet away and that Chandler could have avoided the collision if he had not been speeding. Tommy Sturdivan, an accident reconstructionist retained by Chandler, determined that Chandler and Dennison should have been able to see each other when they were 570 feet apart. According to Sturdivan, Dennison failed to wait at the intersection or failed to make sure that Chandler acknowledged his presence at the intersection. Sturdivan acknowledged that Chandler did not "perceive and respond early enough" and that he would have had

3

more time to respond to the fire truck and to avoid the collision if he had not been speeding. Nevertheless, Sturdivan testified that Chandler would have still collided with the fire truck even if he was not speeding, and that Dennison failed to observe Chandler's vehicle at the intersection and ensure that Chandler was going to slow down or stop.

Chandler filed the instant negligence action against the City, Dennison, and Stacy Meeks,[1] alleging that Dennison breached his duty to operate the fire truck with reasonable care, that the City and Meeks were liable because they failed to properly train Dennison, and that Dennison was acting within the scope of his employment with the City at the time of the accident. The City, Dennison, and Meeks collectively answered the complaint[2] and filed a motion to dismiss, arguing in part that Chandler failed to serve the City with a sufficient ante litem notice because he failed to specify the amount of monetary damages being sought from the City.[3] The trial court

[1] Stacy Meeks is the director of fire services and emergency management for Walker County.

[2] Dennison also asserted a counterclaim against Chandler for negligence, which he later dismissed with prejudice.

[3] The defendants also argued that Dennison was immune from suit in his individual and official capacities, that sovereign immunity barred Chandler's claims that the City and Meeks failed to properly train Dennison, and that Meeks could not

4

concluded that Chandler's ante litem notice was sufficient, and we upheld that determination on appeal. See *City of Lafayette*, supra, 354 Ga. App. at 261-262. The City subsequently filed a motion for summary judgment, arguing that no genuine issues of material fact remained on Chandler's negligence claim because Dennison completely stopped or slowed down before proceeding through the intersection as required by OCGA § 40-6-6 and that Dennison's actions were not the proximate cause of the collision. The trial court summarily granted the City's motion after a hearing, concluding that the City met its initial burden of showing that no genuine issues of material fact remained on Chandler's claim and that Chandler failed to produce rebuttal evidence to create a fact issue. This appeal followed.

In two related enumerations of error, Chandler argues that the trial court erred by granting the City's motion for summary judgment. Specifically, he argues that genuine issues of material fact remain as to whether Dennison exercised due regard by slowing down as necessary before entering the intersection and whether

---

be vicariously liable because he was only Dennison's supervisor. Dennison was removed from the action as a party defendant, and the trial court granted the motion to dismiss as to Chandler's negligent supervision claim and his vicarious liability claim against Meeks.

Dennison's actions were the proximate cause of his injuries. We are constrained to agree that genuine issues of material fact remain as to these claims.[4]

The general principles involved in determining the propriety of a trial court's grant of summary judgment are as follows:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law.

(Citation omitted.) *Giddens*, supra, 366 Ga. App. at 15.

(a) First, we conclude that genuine issues of material fact remain as to whether Dennison slowed down as necessary under OCGA § 40-6-6 before proceeding through the red light.

It is well settled that "[u]nder Georgia law, an employer is responsible for the negligent or intentional torts of its employee, provided they are committed by the

---

[4] In light of this resolution, it is unnecessary to address Chandler's remaining argument that the City failed to establish that Dennison was responding to an "objective emergency" at the time of the collision.

6

employee in furtherance and within the scope of the employer's business." *ABM Aviation v. Prince*, 366 Ga. App. 592, 595 (1) (884 SE2d 8) (2023). "To state a cause of action for negligence, a plaintiff must establish the following essential elements: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." (Citation omitted.) Id.

OCGA § 40-6-6, however, contains certain privileges for authorized emergency vehicles.[5] The statute states in part that "[t]he driver of an authorized emergency vehicle or law enforcement vehicle may . . . [p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation[.]" OCGA § 40-6-6 (b) (2). This privilege, however, does not relieve the driver of an authorized emergency vehicle "from the duty to drive with due regard for the safety of all persons." OCGA § 40-6-6 (d) (1). And, in construing the predecessor statute to OCGA § 40-6-6, we stated generally that questions as to whether due regard was properly exercised are matters for a jury's determination. *Bynes v. Stafford*, 106 Ga. App. 406, 408 (3) (127 SE2d 159) (1962). Moreover, the privileges listed in OCGA § 40-6-6 are affirmative defenses. *Ford v. Macon-Bibb County*, 364 Ga. App. 444,

_____

[5] Chandler does not dispute that a fire truck can be an authorized emergency vehicle within the meaning of the statute.

446 (2) (875 SE2d 427) (2022). Thus, the City had the burden as the party moving for summary judgment to present "evidence sufficient to make out a prima facie case on its affirmative defense." (Citation omitted.) Id. at 446 (2). Indeed, "[t]he burden of proving the affirmative defense that the defendant is entitled to statutory exemptions from traffic regulations [under OCGA § 40-6-6] rests upon [the] defendant, and in order that a defendant may claim exemptions applicable to emergency vehicles the conditions of the emergency vehicle statute must be met." (Citation omitted.) *Wynn v. City of Warner Robins*, 279 Ga. App. 42, 45 (1) (630 SE2d 574) (2006).

Here, it is true that Dennison testified that he slowed down almost to a complete stop before proceeding through the red signal, and that eye witnesses to the collision told law enforcement that Dennison "slowed down and almost stopped before entering the intersection." But Chandler testified that as he approached the intersection, it "seemed like all of a sudden[] [Dennison] was there[,]" and that Dennison "kept coming" before he crashed into the fire truck. Moreover, Chandler's expert testified that Dennison should have waited at the intersection or ensured that Chandler acknowledged his presence, and that Dennison failed to observe Chandler's vehicle at the intersection. Because there is conflicting evidence as to whether Dennison slowed down as was necessary before proceeding past the red light and

8

entering the intersection, genuine issues of material fact remain as to the City's affirmative defense, and the trial court therefore erred to the extent that it granted summary judgment on this basis. See *Ford*, supra, 364 Ga. App. at 447 (3) (concluding that summary judgment in favor of the county based upon its affirmative defense that the fire truck was privileged to proceed past a red signal was improper where the evidence conflicted as to whether the fire truck stopped before entering the intersection on the red light); *Bynes*, supra, 106 Ga. App. at 408 (3) (ambulance owners not entitled to judgment notwithstanding the verdict under the predecessor statute to OCGA § 40-6-6 where the ambulance slowed down before the intersection but failed to slow down before it ran the red light, thereby presenting a question as to whether the ambulance "slow[ed] down as [was] necessary for safe operation").[6]

(b) Second, we also conclude that genuine issues of material fact remain as to whether Dennison's actions proximately caused Chandler's injuries.

It is well settled that "[n]egligence is not actionable unless it is the proximate cause of the injury." (Citation omitted.) *Ga. Dept. of Transp. v. Owens*, 330 Ga. App.

---

[6] The City's reliance on our prior decision in *Brown v. DeKalb County*, 333 Ga. App. 441 (777 SE2d 23) (2015), is greatly misplaced because the plaintiffs in that case did not specifically challenge, nor did we squarely address, whether the fire truck slowed down *as necessary* before proceeding past the red signal.

9

123, 130 (2) (766 SE2d 569) (2014). "Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." (Citation and punctuation omitted.) Id. Moreover, the affirmative defense of avoidable consequences is set out in OCGA § 51-11-7. *Weston v. Dun Transp.*, 304 Ga. App. 84, 88 (1) (695 SE2d 279) (2010). The statute states in part that "[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." OCGA § 51-11-7. As we have more fully explained,

> [t]he plaintiff must exercise ordinary care for [his] own safety, and must by the same degree of care avoid the effect of the [defendant's] negligence after it becomes apparent to [him] or in the exercise of ordinary care [he] should have learned of it. The plaintiff must make use of all [his] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [him].

(Citation omitted.) *Weston*, supra, 304 Ga. App. at 87 (1). "[T]he plaintiff's negligence in failing to avoid the consequences of the defendant's negligence is deemed the sole proximate cause of the injuries sustained and, therefore, is a complete bar to recovery, unless the defendant willfully and wantonly inflicted the injuries." Id.; see also *Zaldivar v. Prickett*, 297 Ga. 589, 601 (2) (774 SE2d 688)

10

(2015) (explaining that "[c]omparative negligence of the plaintiff, . . . and the causal relationship between the wrongdoing of the defendant and the injury sustained by the plaintiff, . . . are distinct questions."). "As with other affirmative defenses, the defendant has the burden of proving, either at trial or summary judgment, that the plaintiff by ordinary care could have avoided the consequences to himself or herself caused by the defendant's negligence." *Weston*, supra, 305 Ga. App. at 87-88 (1).

Here, the City argued below that Dennison's actions were not the proximate cause of Chandler's injuries because Boggess testified that Chandler could have avoided the collision if he had not speeding and that Chandler should have been able to see the fire truck from roughly 500 feet away before the crash. Chandler's expert, however, testified that the collision still would have occurred even if Chandler had not been speeding and that both Chandler and Dennison "should have had clear visibility" of each other at the time of the accident. Because there is some evidence to show that the accident still would have occurred despite Chandler's speeding and that both Chandler and Dennison should have been able to see each other before the collision, we conclude that genuine issues of material fact remain as to whether Dennison proximately caused Chandler's injuries, and thus the trial court erred by granting summary judgment to the City.

Accordingly, for the reasons stated above, we reverse the trial court's order granting the City's motion for summary judgment.

*Judgment reversed. Mercier, C. J., and Hodges, J., concur.*