39673. BROOKS et al. v. CELLIN MANUFACTURING COMPANY, INC. et al.

SMITH, Justice.

Sally Brooks and her daughter, Jodi, brought suit against Cellin Manufacturing and others, alleging that their personal property was destroyed by a 1978 fire in the apartment building in which they

resided. They complained that the fire was caused by negligent installation of cellulose insulation in the building's attic. At trial in 1981 a jury verdict responded to special interrogatories by finding negligence on the part of all the defendants except Cellin, but did not find that their negligence was the proximate cause of the fire. We granted the Brookses' writ of certiorari to review a Court of Appeals decision upholding a trial court evidentiary ruling which prohibited counsel for the Brookses from introducing testimony concerning remedial measures taken by employees of the defendants after the fire. We reverse in part and affirm in part.

This case presents only one question, and it arises from an unusual courtroom exchange. The Brookses proceeded on the theory that insulation installed by R. L. Page Co. covered certain recessed ceiling lights and heat vents of the apartment below, causing sufficient heat to build up to ignite the insulation. The same type insulation had been installed in the same manner in several other buildings in the Tempo apartment complex during a two month period before the fire. Building "C," containing the Brookses' apartment, was insulated on June 2, and burned on June 4, 1978. No other Tempo buildings caught fire. After the fire the remaining buildings were inspected for like problems and where insulation covered such recessed lights, metal shields were attached to keep them clear and uncovered.

At trial, the former Page employee who had installed the insulation was asked a series of questions by counsel for Page concerning insulation installed in other buildings outside the Tempo complex, and whether he had knowledge of any fires ever having occurred in any of these other buildings. The installer knew of no such fires. He was then asked: "Q: To your knowledge, did any of the other buildings in the Tempo complex that you had installed insulation in prior to building C, to your knowledge did any fires occur in those buildings? A: No, ma'am."

Assuming that the witness had answered as to fires in Tempo complex buildings after, as well as before, the 1978 fire, counsel for the Brookses attempted on redirect examination to show that no fires had occurred in the remaining Tempo buildings because hazardous conditions were thereafter corrected by installing metal shields. Page objected to this proffer, arguing that evidence of subsequent remedial efforts is inadmissible. The trial court agreed. The Brookses contended that the jury was left with the unrebutted inference that at the time of the trial in 1981 other Tempo buildings had not burned even though insulation remained covering attic heat sources. The Brookses argue that evidence of the re-inspection and remedying of the insulation hazard should have been admitted in order to make

clear to the jury only that no fires had occurred prior to the fire in question, and that after the fire resulting in the Brookses' loss, the improperly installed insulation had been made safe. Page replies that the Brookses intended to use the tendered evidence to persuade the jury of Page's negligence, and such evidence is of course inadmissible, according to the well established rule prohibiting introduction of evidence of subsequent repairs. *Chastain v. Fuqua Indus.,* 156 Ga. App. 719 (3) (275 SE2d 679) (1980).

The threshold question here is whether the disputed testimony raised an inference that no fires had occurred in the remaining Tempo buildings since 1978 although insulation still covered attic heat sources. It is clear that regardless of counsel for Page's intent (stated in colloquy) in asking the disputed question merely to elicit testimony only about fires prior to June 4, 1978, the effect of her question was to imply that no fires had occurred for the past three years. The transcript shows that counsel's questions moved quickly from inquiries about insulation installation in buildings outside the Tempo complex to the Brookses' building. As a result of this line of questioning the jury was allowed to infer that, despite being similarly constructed and insulated, the other Tempo buildings had not burned. As a result, we must address the issue of whether the Brookses ought to have been allowed to provide evidence of remedial measures.

The policy supporting our rule prohibiting introduction of evidence of subsequent remedial measures to prove negligence is grounded in the view that parties should be encouraged to take the steps necessary to render dangerous circumstances harmless. " '[M]en should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrong-doers.' " *Georgia Sou. &c. R. Co. v. Cartledge,* 116 Ga. 164, 168 (42 SE 405) (1902). It is generally presumed that evidence of subsequent repair is submitted by plaintiffs for the purpose of showing that the defendant recognizes and admits his negligence. *Flowers v. Slash Pine Elec. Membership Corp.,* 122 Ga. App. 254 (3) (176 SE2d 542) (1970). If submitted for some other purpose, however, it may be admissible in a particular case. "Such testimony may, in proper circumstances, be admitted for other purposes . . ." and the jury instructed as to the purpose for which it is received. *Stuckey's Carriage Inn v. Phillips,* 122 Ga. App. 681 (178 SE2d 543) (1970).

This is such a case. The door to rebuttal testimony of remedial measures was opened when counsel questioned the witness as described above. It was the Brookses' contention that insulation covering recessed ceiling lights and vents caused the fire. So long as

the jury was left with the impression as a result of Page's questioning that lights and vents in other Tempo buildings had remained covered since the fire, the Brookses should have been afforded an opportunity to show what changes had been made since the original insulation installation.

Page argues that even if the court's ruling was error, it was harmless in that the Brookses failed to prove that ceiling lights were operating long enough to heat the insulation to its combustion temperature, and therefore a directed verdict was required. We disagree. Experts offered conflicting evidence as to the cause of the fire and in the face of such evidence it is the province of the jury to decide which testimony is most believable. A directed verdict is not warranted unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. See OCGA § 9-11-50 (Code Ann. § 81A-150).

The issue in this case relates only to those defendants who were involved in installing the insulation. Since the question of proper installation is all that remains, the judgment is affirmed as to Cellin and reversed as to the other appellees.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Marshall, P. J., who dissents.*

DECIDED SEPTEMBER 8, 1983.

*Lanham & McGehee, Clark H. McGehee, William C. Lanham,* for appellants.

*Troutman, Sanders, Lockerman & Ashmore, Robert L. Pennington, N. Karen Deming, Long, Weinberg, Ansley & Wheeler, Joseph W. Watkins, Freeman & Hawkins, Michael J. Goldman,* for appellees.