A02A1502, A02A1503. McCORKLE et al. v. DEPARTMENT OF TRANSPORTATION; and vice versa.
(571 SE2d 160)

BLACKBURN, Chief Judge.

In Case No. A02A1502, Jack McCorkle and Glynda McCorkle, as surviving parents of Autumn Burgess, and Jack McCorkle as administrator of the estates of Autumn Burgess, Tyler Burgess, and Cierra Burgess; Sara Burgess, as surviving parent and administratrix of the estate of Johnne Burgess; and Rhonda Lewis and Allen Burgess as surviving parents and administrators of the estate of Karen Burgess, plaintiffs below, appeal the defendant's verdict in their action against the Georgia Department of Transportation for negligent placement of safety devices at an intersection which contributed to a fatal automobile collision.

Appellants contend that the trial court erred by excluding: (1) a memorandum of a DOT engineer asking for consideration of "fast track" placement of a traffic light at the accident location; (2) evidence about repairs made after the accident occurred; (3) evidence from a superior court judge concerning the dangerous nature of the bypass on which the accident site was located; and (4) by refusing to give appellants' charge on similar accidents, giving a contradictory and misleading charge, and inappropriately timing this instruction.

In Case No. A02A1503, a cross-appeal, the DOT, defendant

---

[16] See id.
[17] *Lane v. State,* 210 Ga. App. 738, 740 (1) (437 SE2d 479) (1993).

below, contends that the trial court erred in denying its motion for a directed verdict. Both appeals are consolidated herein for review.

The underlying actions arose from a motor vehicle collision at the intersection of U. S. Highway 84, part of the North Thomasville Bypass, and Georgia Highway 3. On July 4, 1997, a tractor-trailer failed to stop at the intersection notwithstanding the fact that there were stop ahead signs, flashing beacons, rumble strips, and a stop sign in place. The tractor-trailer proceeded through the intersection without slowing and crashed into a car killing all five occupants. The occupants were Johnne Burgess, his wife, their two children, and their niece.

Appellants alleged that the DOT was negligent in the design and maintenance of the intersection, and that such negligence, concurrent with that of the truck driver, caused the deaths. A jury trial resulted in a defendant's verdict for the DOT. We affirm Case No. A02A1502 and dismiss Case No. A02A1503 as moot.

### Case No. A02A1502

1. Appellants contend that the trial court erred by granting the DOT's motion in limine to exclude a September 3, 1997 DOT memorandum recommending a "fast track" safety improvement project which would include a traffic light for the intersection in this case. The Burgesses' fatalities were specifically referred to in the memo, and it stated that public sentiment was a motivating factor for the "fast track request."

The traffic signal improvement was never made. In the alternative, the DOT expedited a construction program for four-laning the bypass. The four-laning had been a part of the DOT long-range plans and, when completed, would include a traffic light at the intersection. The DOT, in its motion in limine, argued that the memo related to a subsequent remedial measure. The trial court agreed and granted the DOT's motion. Appellants also argue that the trial court erred in rejecting their argument that defense witnesses had opened the door to the admission of such evidence.

Evidence of subsequent remedial measures generally is inadmissible in negligence actions, because the admission of such evidence basically conflicts with the public policy of encouraging safety through remedial action, for the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence. It is generally presumed that evidence of subsequent repair is

submitted by plaintiffs for the purpose of showing that the defendant recognizes and admits his negligence.

(Citations and punctuation omitted.) *Thomas v. Dept. of Transp.*[1]

Appellants argue that the memo did not constitute a subsequent remedial measure because the remedy it contemplated, installation of a traffic light at the intersection, was never undertaken. In the alternative, they argue that the memo should have been admitted on one of the following bases: (1) to prove knowledge of a defect; (2) to show the feasibility of modification or repair; or (3) to refute the DOT's position that the light was not needed prior to the accident.

Reviewing the contents of the "fast track" memo, we find no error in the trial court's ruling. First, if the traffic light had been installed, the memorandum would clearly fall within the general rule of exclusion. Although the traffic light has not yet been installed, the evidence indicates that the DOT chose to expedite an alternative solution which would ultimately result in the installation of a traffic light at the intersection although as a part of a larger highway project. This project began a few months subsequent to the collision. Even though the construction had not been completed more than three years later, and the light had not yet been installed, the project was underway. We find no error in the trial court's ruling on this issue. The admission of evidence is within the sound discretion of the trial court, and this Court will not interfere with such exercise absent an abuse of discretion. *Cooper Tire &c. Co. v. Crosby;*[2] *Brooks v. Cellin Mfg. Co.*[3]

We next review appellants' contention that the DOT opened the door to the admission of subsequent remedial measures by the testimony of its witnesses. Appellants rely on *Brooks*, supra, where this Court held that it was error to exclude subsequent remedial measures when the door was opened by testimony that might mislead the jury as to a material issue. In *Brooks*, the Supreme Court held that defendants had opened the door for plaintiffs with testimony that there had been no other fires in the other apartments, despite improperly installed insulation. This gave the impression that improperly installed insulation was not the cause of the fire, when, in fact, the faulty insulation had been repaired in those other apartments.

Appellants also rely on *APAC-Ga. v. Padgett*[4] and *Gunter v. Jack-*

---

[1] *Thomas v. Dept. of Transp.*, 232 Ga. App. 639, 641 (1) (502 SE2d 748) (1998).
[2] *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 456-457 (543 SE2d 21) (2001).
[3] *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983).
[4] *APAC-Ga. v. Padgett*, 193 Ga. App. 706 (388 SE2d 900) (1989).

*son Elec. Membership Corp.*[5] In *APAC-Ga.*, the trial court admitted subsequent remedial measure testimony that a DOT engineer had requested APAC, the contractor, to move signage, after the DOT engineer had "opened the door" by testifying that he was satisfied with signage placement after the accident. Id. at 708 (1). Further, in *Gunter*, this Court reversed the trial court's exclusion of a company supervisor's auto accident investigation report when, on direct examination, the defendant "opened the door" by elaborating extensively on sections of his report which had been excluded as subsequent remedies. *Gunter*, supra at 631 (2).

On the other hand, this Court has also held that "[t]his exception must be applied with care, since any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a party's testimony that he was using due care at the time of the accident. If this counted as impeachment the exception would swallow the rule." (Punctuation omitted.) *Studard v. Dept. of Transp.*[6]

Here, appellants contend that testimony from DOT engineers that the traffic control at the intersection was more than adequate and that there was no recommendation for a traffic light prior to the completion of the bypass four-laning opened the door to the admission of the "fast track" memo as rebuttal that a recommendation was indeed needed and was made prior to the completion of the four-laning. The DOT's denial that a recommendation for a traffic signal had ever been made other than for the four-laning project followed testimony about two of the appellants' exhibits which were applications for a traffic signal at the relevant intersection in 1993 and 1996. The engineer testified that these were applications which were related to the study and planning of the four-laning project. It is reasonably clear from the record that his answer had referred back to the evaluation of the intersection related to these two documents and, therefore, does not constitute an "open door."

The omission of the memo is not misleading as to a material issue in this case as was true in *Brooks*, supra, and *APAC-Ga.*, supra. The "fast track" memorandum is consistent with the other testimony presented by DOT engineers that the intersection did not meet the standards of the Manual on Uniform Traffic Control Devices to warrant a traffic signal prior to the accident, that a signal was contemplated with the four-laning project, and that the primary reason for the special request was the public sentiment about the accident in this case. Further, it cannot be said that the DOT opened the door so broadly as occurred in *Gunter*, supra, in which defendant's testimony

[5] *Gunter v. Jackson Elec. Membership Corp.*, 198 Ga. App. 629 (402 SE2d 309) (1991).
[6] *Studard v. Dept. of Transp.*, 219 Ga. App. 643, 645 (2) (466 SE2d 236) (1995).

introduced a substantial portion of the excluded remedial measures in the accident report into evidence. "Under the circumstances, the trial court clearly could find that the real reason for seeking to introduce evidence of remedial measures was to try to show the defendants' awareness of their own negligence." *Thomas,* supra at 642 (1). "Heeding the warning in *Studard,* supra[,] and deferring to the discretion the trial judge has in deciding such evidentiary matters, we find no abuse of discretion." (Punctuation omitted.) *Royals v. Ga. Peace Officer Standards &c. Council.*[7] We likewise find no error in the trial court's ruling on this issue.

2. Appellants contend that the trial court erred in excluding evidence of repair to the rumble strips at the intersection for impeachment purposes, since the DOT's interrogatory answer denied that any subsequent remedial measures had been made. The specific interrogatory question and answer follow:

> Interrogatory No. 4: Were there any changes (subsequent remedial measures) made to any of the traffic control devices (signs, markings, rumble strips, and the like) after the subject wreck? If so, please state the nature of these changes and the name of present and former DOT employees who have knowledge of those changes.
> Response: No.

The DOT's expert testified that the rumble strips he observed at the accident site in 1999 appeared to be the same as those in photographs taken shortly after the collision in 1997; no work on them had been done recently; they complied with the DOT standards; and the strips would have given notice of the upcoming stop by sound, vibration, and sight.

Appellants contend that the expert's testimony in cross-examination proves that the DOT acknowledged the rumble strips were repaired or refurbished. Appellants are mistaken. The record shows that the DOT expert was asked to read the portion of the truck driver's deposition which alleged the strips had been refurbished after the collision and to acknowledge that he had read that testimony before he gave his opinion on direct examination. There is no evidence that repairs were ever made to the rumble strips or that the DOT conceded such fact. Therefore, there is no inconsistency between the DOT's interrogatory answer and its later testimony as to the rumble strips.

---

[7] *Royals v. Ga. Peace Officer Standards &c. Council,* 222 Ga. App. 400, 404 (3) (474 SE2d 220) (1996).

We cannot say that the trial court abused its discretion in ruling on this issue, and thus there is no error.

3. Appellants also contend that the trial court erred in excluding the testimony of a superior court judge and letters he wrote to the Governor concerning the dangerousness of the bypass. In 1986, the judge had been seriously injured in an accident at a different intersection on the subject bypass.

In *Dept. of Transp. v. Brown*,[8] this Court held that although the general rule is that similar accidents are inadmissible, there are two exceptions: (1) to show that the defendant had knowledge of a certain condition and (2) to show the existence of a dangerous condition. But *Brown* further specifies the evidence is admissible only if it is *"at the same intersection* at other times under the same or similar circumstances."* (Emphasis supplied.) Id.

The superior court judge's testimony, in contention here, is that of a lay witness, since he had no expertise in the field of traffic highway engineering and design and had undertaken no study or investigation as to the bypass. OCGA § 24-9-65 provides for the opinion of lay witnesses if a sufficient foundation for the opinion is laid. *Xiong v. Lankford.*[9] A lay witness's opinion must be based upon the witness's own observations, and he must be able to recite the facts and reasons for the opinion. *Johnson v. Knebel.*[10] A lay witness's opinion based solely on hearsay is inadmissible. *In re Copelan.*[11]

The judge's deposition was proffered, as were the two letters written to the Governor. The judge testified that he had driven through the intersection on occasion, but he had no specific knowledge of the facts and circumstances of the accident involved in this case; did not have any specific information or recollection as to the traffic control in place at this intersection; and had not witnessed or come upon any accident at the intersection. Additionally, the judge testified that he had not witnessed any other accidents on the bypass.

Of the two letters to the Governor, the first was written in 1995 following a fatal accident at the same intersection where the judge was injured. The letter does not contain any reference to the intersection in this accident. Furthermore, the only reference to the bypass as a whole is the phrase "the Bypass is an engineering nightmare." On July 10, 1997, the second letter was written. It does not address any particular intersection or intersections and was written after the

---

[8] *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 183 (4) (460 SE2d 812) (1995).
[9] *Xiong v. Lankford*, 226 Ga. App. 126, 128 (2) (485 SE2d 534) (1997).
[10] *Johnson v. Knebel*, 267 Ga. 853, 855 (1) (485 SE2d 451) (1997).
[11] *In re Copelan*, 250 Ga. App. 856, 866 (553 SE2d 278) (2001).

fatalities in this case. Both the testimony of the judge and the letters were based primarily on knowledge of wrecks on the bypass obtained from news reports or by "word of mouth."

Appellants erroneously rely on *American Golf Corp. v. Manley*,[12] which does not support their position. In *American Golf*, this Court affirmed the admission of a lay witness's testimony about the dangerousness of a golf course cart path when the witness had observed the specific location of the accident and had given a contemporaneous opinion. Id. at 8. Here, the judge did not have any specific information or recollection as to the traffic control in place at this intersection even though he had been through the accident intersection in the past. His letters did not specifically refer to the accident scene in this case. The judge testified he had no personal knowledge of any accidents, other than his own accident, and relied solely on hearsay of other accidents for his opinion of dangerousness.

The judge's letters do not show that the DOT had prior knowledge of a dangerous condition because the 1997 letter was written after the subject collision and neither letter identified the intersection in this case.

It is well settled that " 'determination of whether the witness has established sufficient opportunity for forming a correct opinion, and a proper basis for expressing his opinion, is for the trial court.' " *Xiong*, supra at 129 (2). Absent an abuse of discretion, the trial court's decision will not be disturbed. Id. In light of the fact that other accident evidence must be *similar* and must be *based on personal observations*, the trial court did not abuse its discretion in excluding the judge's testimony and letters.

4. Appellants' last enumeration of error is that the trial court gave an incorrect charge on other similar accidents and improperly timed the instruction. They assert that the trial court's charge is contradictory and misleading, relying upon *Dept. of Transp. v. Brown*, supra. On the first day of trial, a Georgia State Trooper testified as to the dangerousness of the intersection and to other similar occurrences at the intersection. Accident reports of the other occurrences were introduced into evidence at that time.

On the following day, prior to testimony, the court gave the jury limiting instructions on similar accidents. This instruction was repeated at the end of the case. Appellants allege that the timing of the instruction was prejudicial to them, confused the jury, and was, therefore, an abuse of discretion. Although appellants objected to the timing of the limiting instructions on similar accidents on the second day of trial, they did not do so when the charge was given at the end

---

[12] *American Golf Corp. v. Manley*, 222 Ga. App. 7 (473 SE2d 161) (1996).

of the case. Although appellants made post-charge objections to other specific charges, the similar occurrence charge was not addressed at that time. *Golden Peanut Co. v. Bass*.[13] Therefore, they have waived any right to complain on appeal. *Delaney v. Lakeside Villa*.[14] In any event appellants have failed to show any harm or that the timing of the charge was so improper as to warrant reversal, notwithstanding their failure to timely object. *Key v. State*.[15]

Appellants further argue that there has been a substantial error or plain error in the charge which was harmful as a matter of law whether or not they objected. "Plain error is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Punctuation omitted.) *Drug Emporium v. Peaks*.[16] Plain error may be considered whether or not an objection was made to the court's charges. OCGA § 5-5-24 (a).

While this Court stated in *Dept. of Transp. v. Brown*, supra at 183 (5), that the instruction there was a correct statement of the law, it does not follow that any variation from the language of that instruction would be an incorrect statement of the law. Instead, we review the instruction in the present case to determine whether it was erroneous. The contention that "the charge is incorrect and erroneous as an abstract principle of law raises . . . the question as to whether it is, standing alone, a sound pronouncement of law." *Mut. Benefit Health &c. Assn. of Omaha v. Hickman*.[17]

Here, the statements in the instruction given are not contradictory, but set out separate limits on the use of other collision evidence that was presented in this particular case. First, the instruction states that similar occurrence evidence may be used only to show the intersection was dangerous or that the DOT had notice of that fact. Thereafter, this general rule is limited by the statement that other collision evidence *alone* is insufficient to show notice or dangerousness. The original charge correctly states, in accordance with *Dept. of Transp. v. Brown*, supra, that the jury may consider the evidence to show both notice and dangerousness.

The later limiting charge incorrectly states that similar evidence *alone* cannot show notice or dangerousness. This Court finds no case law to support this statement. "When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful,

[13] *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 236 (2) (547 SE2d 637) (2001).

[14] *Delaney v. Lakeside Villa*, 210 Ga. App. 430 (2) (440 SE2d 668) (1993).

[15] *Key v. State*, 226 Ga. App. 240, 241 (1) (485 SE2d 804) (1997).

[16] *Drug Emporium v. Peaks*, 227 Ga. App. 121, 125 (2) (a) (488 SE2d 500) (1997).

[17] *Mut. Benefit Health &c. Assn. of Omaha v. Hickman*, 100 Ga. App. 348, 363 (3) (111 SE2d 380) (1959).

and this court will so hold unless it appears from the entire record that the error is harmless." (Punctuation omitted.) *Vaughn v. Protective Ins. Co.*[18]

Here, the error in the limiting charges was harmless because there was other substantial evidence produced at trial to show dangerousness and notice of dangerousness (i.e., the testimony of the trooper that the intersection was dangerous; testimony of a DOT engineer that he was contacted by the county commission chairman who had received citizen complaints and asked that something be done about the intersection; county commission chairman's testimony that he requested a traffic light and sought it to make the intersection safer for the public; and another DOT engineer's testimony that the intersection had a history of some fatal accidents and that the DOT would have received these accident reports and investigated them). Therefore, the record shows that the charge error was not likely to have influenced the jury to find against the appellants and was not so prejudicial as to constitute reversible error.

### Case No. A02A1503

In Case No. A02A1503, a cross-appeal, the DOT appeals the trial court's denial of its motion for a directed verdict. Having affirmed Case No. A02A1502, this cross-appeal is moot.

*Judgment affirmed in Case No. A02A1502. Appeal dismissed in Case No. A02A1503. Johnson, P. J., and Miller, J., concur.*

DECIDED AUGUST 22, 2002 —
RECONSIDERATION DENIED SEPTEMBER 17, 2002 —

*Chason & Willett, Jonathan K. Chason, Charles A. Gower, J. Frank Myers III*, for appellants.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Lawson, Davis, Pickren & Seydel, G. Thomas Davis, Paul R. Jordan, Donald P. Boyle, Jr., Alexander & Vann, Raleigh W. Rollins*, for appellee.

---

[18] *Vaughn v. Protective Ins. Co.*, 243 Ga. App. 79, 83 (3) (532 SE2d 159) (2000).