**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0673. MARK et al. v. AGERTER.

BRANCH, Judge.

This medical malpractice case arises out of Dr. Edward Mark's alleged negligent placement of a halo device on Austin Agerter. Dr. Mark and his medical practice, Neurology, Neurosurgery & Spine Clinic of South Georgia, LLC (collectively, "Mark"), appeal from an order of the Superior Court of Lowndes County, which denied in part Mark's motion in limine to exclude evidence of Mark's alleged remedial measure. Specifically, the trial court found that evidence of the alleged remedial measure could be introduced to impeach the testimony of one of Mark's witnesses. Mark contends that this ruling is in error, because no conflict exists between the testimony of his witness and Mark's decision to change his practice as to the placement of halo devices on his patients. For reasons explained more fully

below, we agree with Mark and reverse that part of the trial court's order which holds that evidence of Mark's alleged remedial measure is admissible for impeachment purposes.[1]

A denial of a motion in limine is reviewed for an abuse of discretion, and an abuse of discretion occurs when the trial court "misapplies the law." *One Bluff Drive v. K. A. P., Inc.*, 330 Ga. App. 45, 51-52 (766 SE2d 508) (2014); *Thomas v. State*, 330 Ga. App. 67, 70 (766 SE2d 527) (2014). Because a motion in limine is a pretrial determination of the admissibility of evidence, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005). Irrelevant evidence that "does not bear directly or indirectly on the question being tried" should be excluded. *CNL APF Partners v. DOT*, 307 Ga. App. 511, 515 (705 SE2d 862) (2010); *Housing Auth. of Macon v. Younis*, 279 Ga. App. 599 (631 SE2d 802) (2006). A trial court errs in denying a motion in limine when there is "no circumstance under which the evidence at issue [is] likely to be admissible" at trial. *Younis*, 279 Ga. App. at 601. Here, the trial court abused its discretion when it misapplied the relevant law.

---

[1] We affirm the remainder of the trial court's order, which neither party has challenged on appeal.

2

So viewed, the record shows that on or about June 12, 2007, Agerter was injured in a motor vehicle accident and was transported to South Georgia Medical Center where Mark, a neurosurgeon, diagnosed Agerter's injury as a fractured C2 vertebra. Mark treated Agerter by placing him in a halo device designed to stabilize his spine. The horseshoe-shaped device was placed with the opening in the front, rather than the back, and was anchored either in the frontal bone of Agerter's skull or in his temples.[2] Agerter was later treated by Dr. Daniel H. Silcox, III, an orthopedic surgeon and a cousin of Agerter's mother, who advised Agerter that the halo device was on backwards. Silcox reversed the halo device so that the opening was in the back. Agerter subsequently sued Mark for malpractice, claiming that Mark's negligent placement of the halo opening in the front, with screws in Agerter's temples, caused muscle and other tissue damage.

Mark contends that Agerter's halo ring was properly installed with the opening in the front. At trial, Mark plans to introduce the testimony of Alfred Iverson, president of the company that manufactures the halo device. During his deposition, Iverson testified that from a structural engineering standpoint, nothing restricts the

---

[2]Agerter contends that the screws were placed into his temple muscles. Mark, however, claims that the screws were placed in the frontal bone.

3

placement of the halo with the opening in the front, and the decision of where to position the halo is with the discretion of the treating surgeon.

Prior to Agerter's lawsuit against him, Mark's "routine custom and practice" was to place the halos on his patients with the opening in the front, as Mark did with Agerter. However, Mark testified as to his belief that Agerter sued because the manufacturer's pamphlet depicted the halo device installed with the opening in the back.[3] Thus, Mark further testified that after Agerter filed his suit, he positions all halo devices on his patients with the opening in the back. Mark explained his decision to change his usual practice, stating that the lawsuit meant that "my [previous] practices and what I had been doing had obviously come into question . . . and if there's a chance that the standard would be changed, I didn't want to be [sued] again."

To support his negligence claims, Agerter wishes to introduce evidence of Mark's change in procedure at trial. Mark filed a motion in limine to exclude this change as inadmissible evidence of a subsequent remedial measure.

---

[3]Agerter apparently received two pamphlets; one when he was released from the hospital and one that came in the box with the halo device.

4

The trial court granted Mark's motion in limine in part and ruled that Mark's testimony about the change in position was indeed evidence of a subsequent remedial measure and therefore was generally inadmissible. The court concluded, however, that if Agerter presented evidence that would be contradicted by Mark's actions, then the evidence of a change in procedure would be admissible. The court further ruled that Iverson's proposed testimony would "conflict with . . . Dr. Mark's actions" and therefore would "open the door" for the evidence of Mark's change in practices. Accordingly, if Mark presented Iverson's testimony, then Agerter could "go into Dr. Mark's change in his procedures following his care and treatment of the Plaintiff in this case."

Mark applied for a certificate of immediate review of the trial court's ruling as to the admissibility of Mark's subsequent remedial measure for impeachment purposes. The trial court issued the requested certificate, and this Court subsequently granted Mark's application for an interlocutory appeal.

OCGA § 24-4-407 restricts evidence of subsequent remedial measures as follows:

> In civil proceedings, when, after an injury or harm, remedial measures are taken to make such injury or harm less likely to recur, evidence of

the remedial measures shall not be admissible to prove negligence or culpable conduct.

This rule exists because persons "should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrong-doers." *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983) (citation and punctuation omitted). When subsequent remedial measures are introduced, it is "generally presumed" that the purpose is to show "that the defendant recognizes and admits his negligence." *McCorkle v. Dept. of Transp.*, 257 Ga. App. 397, 398-399 (1) (571 SE2d 160) (2002) (citation and punctuation omitted). Therefore, "evidence of subsequent remedial measures generally is inadmissible in negligence actions." Id. at 398 (1). Otherwise, "the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence." Id.

Evidence of subsequent remedial measures may, however, be used for impeachment: "The provisions of this code section shall not require the exclusion of evidence of remedial measures when offered for impeachment." OCGA § 24-4-407. We have cautioned that the impeachment exception

6

"must be applied with care, since any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a party's testimony that he was using due care at the time of the accident. If this counted as impeachment the exception would swallow the rule."

*McCorkle*, 257 Ga. App. at 400 (1), quoting *Studard v. Dept. of Transp.*, 219 Ga. App. 643, 645 (2) (466 SE2d 236) (1995); see also *Russell v. Parkford Mgmt. Co.*, 235 Ga. App. 81, 82 (1) (508 SE2d 454) (1998) (cautioning that exceptions to the ban on evidence of subsequent remedial measures must be applied "most judiciously") (punctuation omitted).

*Brooks*, supra, illustrates the proper use of the impeachment exception in a negligence action. There, the plaintiffs sued the installers of insulation in their apartment complex after their building burned down. 251 Ga. at 395-396. The plaintiffs' theory was that the installers had negligently covered recessed lights and vents two days before the fire, allowing heat to build up until the insulation ignited. Id. at 396. The defendants sought to refute the causation element of the plaintiff's case by offering testimony that no other buildings in the complex had caught fire. Id. The plaintiffs sought to impeach this testimony by introducing evidence that the installers had quickly corrected the problem in the other buildings by installing metal shields to keep the insulation out of the recessed areas. Id. at 396-397. The trial court

excluded the evidence, but the Supreme Court held that the defendant had opened the door to rebuttal testimony of remedial measures. Id. Therefore, the subsequent remedial measures should have been admitted under the impeachment exception. Id. at 397-98. Otherwise, the jury was left with the erroneous impression that the other recessed areas had remained covered, yet had not caught fire. Id. at 398; see also *APAC-Georgia v. Padgett*, 193 Ga. App. 706-709 (1) (388 SE2d 900) (1989) (allowing evidence of subsequent remedial measures to correct false impression left by defendant's testimony).

In this case, Mark wants to introduce Iverson's testimony that there is nothing wrong, from a structural engineering standpoint, with placing the halo opening in the front and that such placement decisions are left to the surgeon. This testimony does not "contradict" Mark's later decision to exercise his discretion to position halo openings in the rear. Indeed, Mark's decision is consistent with Iverson's testimony that the halos may be installed in either direction, at the discretion of the treating physician. Thus, unlike the evidence at issue in *Brooks*, Iverson's testimony does not have the potential to mislead the jury on questions of negligence or causation.

Accordingly, there is currently no evidence which the subsequent remedial measure could impeach. We therefore reverse the trial court's finding that the

8

impeachment exception applies here, as this ruling misapplied the relevant law and thus constitutes an abuse of discretion. We affirm the remainder of the trial court's order on Mark's motion in limine.

*Judgment affirmed in part and reversed in part. Andrews, P. J., concurs. Miller, J., concurs in judgment only.*