**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 19, 2024**

# In the Court of Appeals of Georgia

A24A1167. MACMILLAN v. THE STATE.

DILLARD, Presiding Judge.

Jonathan MacMillan appeals his convictions for two counts of armed robbery, two counts of aggravated assault on a peace officer, possession of a firearm during the commission of a felony, and fleeing or attempting to elude a peace officer. Specifically, MacMillan argues there was insufficient evidence to support one of his armed-robbery convictions, and that the court committed plain error in giving a jury instruction on the accomplice-corroboration requirement for only two of the four felony charges. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that Guihong Gao owns Tong Tong Chinese Massage ("Tong Tong"); and at the relevant time, she had two employees, known to her as Lucy and Yang.[2] On November 22, 2011, around 8:00 p.m., Gao and Yang were sitting in the front area of the business near the cash register, while Lucy was with a client in a separate room. At some point, a white man in dark clothing—later identified as MacMillan—came in through the front door wearing a mask and pointed a gun at Gao's forehead. Gao does not speak English well, and the only thing she heard MacMillan say was that he wanted money. As soon as Yang saw the armed man, she ran into the room where Lucy was massaging the client and locked the door. Once alone with him, Gao tried to make conversation with MacMillan and gave him $200, which she had in her book bag.

MacMillan was dissatisfied with this amount of money, and he forced Gao at gunpoint to go to just outside of the room where her employees were hiding and to tell

---

[1] *See, e.g.*, *Roundtree v. State*, 358 Ga. App. 140, 141 (854 SE2d 340) (2021).

[2] When asked to identify her employees, Gao stated, "one . . . I know her nickname, Lucy; the other one I know last name Yang[,]" but she later stated that she did not remember their "real names."

them to slide more money under the door. The door remained closed and locked, but Yang eventually slid $40 under the door to MacMillan. MacMillan responded that $40 was not sufficient, and he then demanded $3,000 in cash. MacMillan continued pointing the gun at Gao's head, and she remained still. At some point, MacMillan's wife—Jessica MacMillan—entered Tong Tong and asked him why things were taking so long. Jessica had a large black bag and she took all of the "electronic stuff"—a computer and at least one cell phone.

Around 9:00 p.m., Officer Terrance Stewart with the Duluth Police Department was dispatched to Tong Tong; and some time before he arrived, Officer Crystal Findura—who was already on the scene—reported over the police radio that "somebody was pointing a gun at her." And when Stewart arrived, he observed Findura taking "a defensive stance" on the front passenger side of her patrol car. Findura was in close proximity to MacMillan, and Stewart tried to draw his attention away from her by running in a different direction and ordering him to drop his weapon. In doing so, Stewart tripped over a curb at which point he heard gunfire erupting. Stewart then hid behind a nearby bush and fired shots back at MacMillan.

At this point, Officer Stewart saw an individual—later identified as Jessica—run out of the building; and according to Stewart, Jessica ran toward her and MacMillan's car because she observed MacMillan standing beside the passenger door "[i]n a shooting stance." Jessica dove over "the passenger seat into the driver's seat[,]" put the car in reverse, and fled the scene. As they drove away, MacMillan was in the passenger seat and telling Jessica which way to go. Jessica was aware the police were chasing them, but MacMillan told her not to stop. The chase lasted approximately 10 to 15 minutes, during which time Jessica was driving erratically and speeding "probably into the hundreds." Eventually, Jessica and MacMillan were able to elude the police, and they went to his parents' house in Marietta, Georgia, where they had been living. Once home, Jessica went to bed while MacMillan stayed up to clean their car. About an hour later, MacMillan woke Jessica up and asked her to follow him driving in their car in a different vehicle, so they could leave the car they used in the robbery in another location approximately 30 to 40 minutes away. After doing so, the couple returned home and went to sleep.

The next morning, the MacMillans were woken up by Jessica McCann—a former Cobb County patrol officer—knocking on their door. Jessica (MacMillan)

4

went outside to talk with McCann, who advised her that the police recovered a car registered to MacMillan, and she was there to check on the couple's well-being since the car was riddled with bullet holes.[3] In response, Jessica lied, telling McCann the car had been stolen and that she and MacMillan had been at her sister's house in Alabama the previous evening. Jessica claimed they arrived home from the trip at around 1:00 a.m. and were unaware their car had been stolen. McCann also eventually spoke with MacMillan over the phone, and he told her in a "whispering" voice that he left his home the prior evening with a friend at 4:30 a.m. to go to work, exiting the house in an area where he would not have seen that the car was missing.

About two weeks later, Cobb County police returned to the MacMillans' home, and this time, Jessica was taken to the police station for questioning. At first, Jessica maintained her story that she and MacMillan were in Alabama on the night in question, but when confronted with cell-phone data showing she was in Georgia that

---

[3] Jessica MacMillan's testimony is somewhat unclear as to whether there was more than one officer and whether she spoke with a male or female officer. But at trial, Officer McCann testified that she was the officer who spoke with Jessica the morning after the robbery. According to Jessica, MacMillan was hiding in a bathroom while she spoke to McCann.

night, Jessica told the police the truth about the robbery.[4] Following the investigation that ensued, MacMillan and Jessica were charged in a joint indictment with several crimes related to the robbery.

Relevant here, MacMillan was charged, via indictment, with two counts of armed robbery, two counts of aggravated assault on a peace officer, possession of a firearm during the commission of a felony, and fleeing or attempting to elude a peace officer.[5] Prior to MacMillan's trial, Jessica reached a plea deal with the State, under which she agreed to testify truthfully against him. Following a jury trial in 2014, MacMillan was convicted of all charged offenses. MacMillan then filed a motion for a new trial (which he amended twice), and the trial court denied it after a hearing on the matter. This appeal follows.[6]

---

[4] At MacMillan's trial, Jessica testified and read a written statement that she had given the police, which generally described the evidence set forth *supra*.

[5] The indictment also charged MacMillan with burglary and a third armed-robbery offense, but prior to jury selection, the State successfully moved the court to dismiss those charges.

[6] MacMillan initially appealed his convictions to the Supreme Court of Georgia on March 5, 2019, but the Supreme Court transferred it to this Court on January 27, 2020, where it was docketed as Case No. A20A1491 on March 2, 2020. In that appeal, this Court remanded the case to the trial court on May 18, 2020, so it could hold a hearing on the State's contention that the record was incomplete. After the issue was

1. MacMillan first argues the evidence was insufficient to support one of his two convictions for armed robbery. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[7] And, of course, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[8] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[9] Bearing these guiding principles in mind, we

---

resolved on remand, MacMillan filed the instant appeal, which was docketed on March 15, 2024. It is unclear from the records in both cases why such lengthy delays repeatedly occurred such that a decade has now passed since MacMillan's convictions.

[7] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[8] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[9] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

turn to MacMillan's specific challenge to the sufficiency of the evidence to support the armed robbery charged in count two of the indictment.

The statute at issue, OCGA § 16-8-41 (a) provides that:

> A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the *immediate presence of another* by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.[10]

And here, count two of the indictment charged MacMillan with armed robbery in that "on the 22nd day of November, 2011, [he] did then and there unlawfully with intent to commit theft, take cash, the property of Yanhua Yang, *from the immediate presence of [ ] Yang*, by use of an offensive weapon, to wit, a handgun, contrary to the laws of [this] State . . . ."[11]

On appeal, MacMillan argues the evidence was insufficient to support Count Two because Yang was not in the "immediate presence" of him or his handgun at the time he took the $40 she slid under the door to Gao. Specifically, MacMillan contends that, unlike Gao, who he held at gunpoint just outside of the door to the massage

---

[10] (Emphasis supplied).

[11] (Emphasis supplied).

room, there was a closed and locked door separating him from Yang.[12] But as we have previously explained, "armed robbery may be committed even out of the physical presence of the victim if what was taken was under the victim's control or responsibility and if the victim was not too far distant."[13] And here, despite the door between them, Yang was *extremely* close to MacMillan with a firearm when he robbed her, which is more than sufficient to satisfy Georgia's immediate-presence requirement for an armed-robbery conviction.[14]

---

[12] Using nearly identical language as count two, count one of the indictment charged MacMillan with armed robbery of Gao, but he concedes the evidence was sufficient to support his conviction for that charge.

[13] *Stokes v. State*, 362 Ga. App. 223, ____ (1) (a) (867 SE2d 834, 837 (1) (a)) (2022) (punctuation omitted); *accord Matthews v. State*, 268 Ga. 798, 804 (7) (a) (493 SE2d 136) (1997); *see Benton v. State*, 305 Ga. 242, 244-45 (1) (b) (824 SE2d 322) (2019) ("[F]or over a century, Georgia courts have interpreted the 'immediate presence' standard *broadly*; our case law reflects that, generally speaking, the victim's physical presence at the theft is not required for armed robbery if what was taken was under his control or his responsibility and if he was not too far distant." (punctuation omitted) (emphasis supplied)); *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975) (explaining, as to an armed-robbery conviction, that "[o]ne's 'immediate presence' in this context *stretches fairly far*, and robbery convictions are usually upheld even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant" (punctuation omitted)).

[14] *See Jordan v. State*, 307 Ga. 450, 452 (1) (836 SE2d 86) (2019) (affirming a conviction for armed robbery, finding that the immediate-presence requirement was satisfied even if one of the defendants stole a wallet from the back of the house while

MacMillan also maintains there was no evidence Yang knew there was an armed assailant on the other side of the door when Gao asked her for money. This allegation is belied by the record. Indeed, Gao testified that Yang ran to the massage room "right away" when she saw MacMillan enter Tong Tong with a gun pointed at them. And even if she did not hear MacMillan's voice when Gao asked her for money, she could reasonably infer that Gao was doing so at the behest of the man who she had just seen enter Tong Tong with a gun.

Finally, MacMillan summarily argues that Gao was the only victim of armed robbery because she was the one who actually handed the $40 to him after Yang slid it under the locked door. This contention is a nonstarter. Indeed, MacMillan concedes that Yang was the person who was initially in *possession* of the money before she gave it to Gao, and he cites no legal authority suggesting that Gao's brief handling of *Yang's*

the defendant and another individual were robbing the victim at gunpoint in the living room); *Benton*, 305 Ga. at 244-45 (1) (b) (concluding that the immediate-presence requirement for armed robbery was satisfied when "the victim remained on the property during the robbery; [and], the items that were stolen were taken from the victim's residence, which was under his control"); *Matthews*, 268 Ga. at 804 (7) (a) (holding that the immediate-presence requirement for armed robbery was established even though the victim escaped through the front door before money was taken); *Welch*, 235 Ga. at 245 (1) (affirming a conviction for armed robbery even though the victim was absent from the convenience store for 15 minutes during the time when the money was taken).

money has any legal bearing on whether he robbed Yang. And, of course, mere conclusory statements are "not the type of meaningful argument contemplated by our rules."[15]

In sum, applying Georgia law to the immediate-presence requirement of armed robbery in these circumstances (and given the broad standard we apply for the required proximity), there was sufficient evidence to support MacMillan's conviction on count two of the indictment even though Yang fled into a nearby room for her own safety before he robbed her.[16]

2. Next, MacMillan argues the trial court committed plain error by giving a deficient jury instruction regarding the corroboration requirement for an accomplice's testimony. Again, we disagree.

---

[15] *Farmer v. Dep't of Corr.*, 346 Ga. App. 387, 394 (2) (816 SE2d 376) (2018) (punctuation omitted); *see Woods v. Hall*, 315 Ga. App. 93, 96 (726 SE2d 596) (2012) ("[A]n assertion of error followed by a case citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (punctuation omitted)).

[16] *See supra* notes 13-14 & accompanying text.

We review *de novo* an allegedly erroneous jury instruction, which is "a legal question."[17] And in assessing the assertion that a jury instruction was erroneous, it must be evaluated in "the context of the trial court's jury instructions as a whole."[18] Indeed, the only requirement regarding jury charges is that they were, as given, "correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence."[19] Additionally, an erroneous charge does not warrant a reversal "unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered."[20] That said, erroneous charges are "presumed to be prejudicial and

---

[17] *Wright v. State*, 365 Ga. App. 288, 289 (1) (878 SE2d 137) (2022) (punctuation omitted); *see Walker v. State*, 311 Ga. 719, 722 (2) (859 SE2d 25) (2021) ("Whether the evidence was sufficient to warrant the requested [jury] instruction is a legal question, which we review *de novo*." (punctuation omitted)).

[18] *Wright*, 365 Ga. App. at 289 (1) (punctuation omitted); *see Walker*, 311 Ga. at 724 (3) ("When we are presented with a claim that a particular instruction is misleading, we do not evaluate jury charges in isolation, but rather consider them as a whole to determine whether there is a reasonable likelihood the jury improperly applied a challenged instruction." (punctuation omitted)); *Fassnacht v. Moler*, 358 Ga. App. 463, 475 (1) (b) (855 SE2d 692) (2021) (explaining that jury charges and recharges must be read as a whole).

[19] *Wright*, 365 Ga. App. at 289 (1) (punctuation omitted); *accord Pye v. State*, 322 Ga. App. 125, 129 (2) (742 SE2d 770) (2013).

[20] *Wright*, 365 Ga. App. at 289 (1) (punctuation omitted); *accord Williams v. State*, 267 Ga. 771, 773 (2) (a) (482 SE2d 288) (1997); *Mubarak v. State*, 305 Ga. App. 419, 421 (2) (699 SE2d 788) (2010).

harmful, but this is not conclusive because the presumption of harm which arises from a charging error may be overcome by a review of the record as a whole."[21]

Here, our examination of this enumeration of error is limited due to MacMillan's failure to object to the challenged jury charge prior to the jury's deliberations, which he concedes on appeal. And because of this failure, we review his challenge to the accomplice-corroboration instruction for plain error only.[22] In this regard, our Supreme Court has explained that there are four prongs to consider when applying plain-error analysis:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the

---

[21] *Payne v. Thompson*, 234 Ga. App. 533, 533 (507 SE2d 257) (1998) (punctuation omitted); *see McCorkle v. Dep't of Transp.*, 257 Ga. App. 397, 404 (4) (571 SE2d 160) (2002) ("When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless." (punctuation omitted)).

[22] *See* OCGA § 17-8-58 ("Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."); *Roundtree*, 358 Ga. App. at 145 (2) (reviewing a challenge to a jury charge for plain error only because the appellant failed to challenge the charge at issue below).

ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[23]

Suffice it to say, satisfying all four prongs of this standard is "difficult, as it should be."[24]

Relevant to the jury charge at issue, OCGA § 24-14-8 provides as follows:

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and *felony cases where the only witness is an accomplice*, the testimony of a single witness shall not be sufficient. Nevertheless, *corroborating circumstances* may dispense with the necessity

---

[23] *State v. Kelly*, 290 Ga. 29, 32 (2) (a) (718 SE2d 232) (2011) (quoting *Puckett v. United States*, 556 U.S. 129 (II) (a) (29 SCt 1423, 173 LE2d 266) (2009)); *Roundtree*, 358 Ga. App. at 145-46 (2) ("[R]eversal based on plain error is authorized only if "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."(punctuation omitted)).

[24] *Kelly*, 290 Ga. at 33 (2) (a) (punctuation omitted); *accord Roundtree*, 358 Ga. App. at 146 (2).

for the testimony of a second witness, except in prosecutions for treason.[25]

So, in felony cases (such as this one) an accomplice's testimony must be corroborated by other evidence.[26] Significantly, the necessary corroboration may "consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime."[27] Indeed, sufficient corroboration of accomplice testimony "requires only

_____

[25] (Emphasis supplied); *see Huff v. State*, 300 Ga. 807, 810 (2) (796 SE2d 688 (2017) (quoting OCGA § 24-4-8 ). MacMillan's trial was in 2011, and OCGA § 24-4-8 was slightly amended in 2013, but not in any respect material to this case. *See Johnson v. State*, 288 Ga. 803, 805 (1) n.2 (708 SE2d 331) (2011) (quoting version of OCGA § 24-4-8 effective in 2011 as follows: "The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and *felony cases where the only witness is an accomplice*, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason." (emphasis supplied)).

[26] *See Montanez v. State*, 311 Ga. 843, 848 (1) (b) (860 SE2d 551) (2021) ("[I]n felony cases where the only witness is an accomplice to the crimes, that witness's testimony alone is insufficient to support a defendant's convictions."); *Raines v. State*, 304 Ga. 582, 587 (2) (a) (820 SE2d 679) (2018) ("When the only witness is an accomplice, corroborating evidence is required to support a guilty verdict.").

[27] *McCain v. State*, 300 Ga. 400, 401 (794 SE2d 58) (2016) (punctuation omitted); *accord Raines*, 304 Ga. at 588 (2) (a).

15

slight evidence."[28] The corroborating evidence, then, "need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt."[29] Finally, and importantly, the sufficiency of the corroboration is "a matter for the jury to decide."[30]

Turning to the instant case, it is undisputed that Jessica was an accomplice to MacMillan's felony offenses, and the trial court instructed the jury on the accomplice-corroboration requirement as follows:

> The testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there is not [a] legal requirement of corroboration of a witness, provided you find the evidence to be sufficient.

---

[28] *Raines*, 304 Ga. at 588 (2) (a) (punctuation omitted); *see McCain*, 300 Ga. at 401 (explaining as to the accomplice-corroboration requirement, "it is well established that slight evidence of corroboration is all that is needed").

[29] *Montanez*, 311 Ga. at 849 (2) (b) (punctuation omitted); *accord Raines*, 304 Ga. at 588 (2) (a).

[30] *Montanez*, 311 Ga. at 849 (2) (b) (punctuation omitted); *accord Raines*, 304 Ga. at 588 (2) (a).

An exception to this rule is made in the case of *armed robbery and aggravated assault upon a peace officer*, where the witness is an accomplice. The testimony of the accomplice alone is not sufficient to warrant a conviction. The accomplice's testimony must be supported by other evidence of some type, and that evidence must be such as would lead to the inference of guilt of the defendant independent of the testimony of the accomplice.

It is not required that the evidence be sufficient to warrant a conviction, or that the testimony of the accomplice be supported in every material particular. The supporting evidence must be more than that a crime was actually committed by someone. It must be sufficient to connect the defendant with the criminal act and must be more than sufficient to merely cast upon the defendant a grave suspicion of guilt.

Slight evidence from the other source that connects the accused with the commission of the alleged crime and tends to show participation in it may be sufficient supporting evidence of the testimony of that accomplice. In order to convict, that evidence, when considered with all of the other evidence in the case, must be sufficient to satisfy you, beyond a reasonable doubt, that the defendant is guilty.[31]

In this case, MacMillan does not argue that the foregoing jury charge, generally speaking, is an incorrect statement of law. Nor could he. The trial court's instruction

---

[31] (Emphasis supplied).

accurately reflects Georgia law as to the accomplice-corroboration requirement detailed *supra*. Instead, MacMillan contends the trial court plainly erred by specifically stating this requirement applied to his charges for armed robbery and aggravated assault on a peace officer, but omitting his other felony charges of possession of a firearm during the commission of a felony and fleeing or attempting to elude a peace officer. MacMillan claims that, given this omission, the jury could have impermissibly convicted him of the latter offenses solely based on Jessica's testimony.

Significantly, this Court is not required to "analyze all elements of the plain-error test [when] an appellant fails to establish one of them."[32] And here, the parties agree the first two prongs of the plain-error test are satisfied—there was a clear and obvious error—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned (*i.e.*, affirmatively waived) by MacMillan.[33] But importantly, MacMillan cannot satisfy the third prong of the plain-error test, which is fatal to his claim.

---

[32] *Palencia v. State,* 366 Ga. App. 316, 319 (881 SE2d 461) (2022) (punctuation omitted); *accord Payne v. State*, 314 Ga. 322, 325 (1) (877 SE2d 202) (2022).

[33] *See supra* note 23 & accompanying text.

The third prong of the plain-error test requires that the error affect the appellant's substantial rights, which in the ordinary case means he must demonstrate that it *affected the outcome of the trial court proceedings*.[34] And under the circumstances of this case, we find it *highly* unlikely that the trial court's reference to some, but not all of MacMillan's felony charges in the relevant jury instruction had any bearing on the outcome of his trial. Put simply, given that *all* of MacMillan's charges related to the same continuous crime spree committed by the same person, the evidence would likely only support a verdict that MacMillan was either guilty of all of the charged offenses or none of them.

For example, one of the omitted charges from the instruction was possession of a firearm during the commission of a felony, and the jury clearly found sufficient corroboration of Jessica's testimony as to armed robbery, which was included in the instruction and requires a firearm to be in a defendant's possession when committing that felony. Furthermore, MacMillan's alleged aggravated assault on a peace officer, which was included in the instruction, immediately preceded his alleged attempt to flee or elude a peace officer, which was omitted from the charge. And as previously

---

[34] *See id.*

noted, evidence of the defendant's conduct "before and after the crime was committed may give rise to an inference that he participated in the crime."[35] Suffice it to say, the charged offenses were inextricably intertwined, and it would be highly unlikely that the jury would not comply with the accomplice-corroboration instruction for all charged offenses.

Additionally, any prejudice suffered by MacMillan was mitigated by the State's presentation of corroborating evidence for Jessica's testimony as to all charges. As to the possession of a firearm offense, Gao testified that MacMillan held her at gunpoint while he robbed her, corroborating Jessica's testimony that he possessed a firearm during the commission of the felony. As to his identity, Gao testified that when Jessica entered Tong Tong, she called the gunman "Jonathan"—MacMillan's first name. There was also testimony from an officer that a police chase ensued following MacMillan's shootout with police, which corroborated Jessica's testimony regarding the charge of fleeing or attempting to elude a peace officer—the other offense omitted from the accomplice-corroboration instruction. And at least two of the police officers who exchanged fire with MacMillan corroborated Jessica's testimony that they fled

---

[35] *McCain*, 300 Ga. at 401 (punctuation omitted); *accord Raines*, 304 Ga. at 588 (2) (a).

the crime scene while he was still shooting at police. Finally, although it was not a jury instruction given with the authority of the court, prejudice resulting from the challenged jury instructions was also mitigated by the State when it told the jury about the accomplice-corroboration requirement—without referencing any particular offense—during its closing argument.

Simply put, in Georgia, there is a "presumption that qualified jurors, in the absence of clear evidence to the contrary, followed the instructions of the trial court."[36] And the jury clearly found sufficient corroborating evidence for two of the four related offenses, which were inextricably intertwined with the other two offenses. Under such circumstances, MacMillan has not shown the alleged deficiency in the trial court's instruction affected the jury's verdict, and so he has not demonstrated that the court committed plain error.[37]

---

[36] *Mayo v. State*, 319 Ga. 34, 41 (2) (b) (i) (901 SE2d 522) (2024) (punctuation omitted); *accord Herring v. State*, 277 Ga. 317, 320 (6) (c) (588 SE2d 711) (2003).

[37] *See Hawkins v. State*, 304 Ga. 299, 302-03 (3) (818 SE2d 513) (2018) (holding that although failure to give accomplice-corroboration charge was clear and obvious error, it did not likely affect the outcome of the trial because "there was significant and consistent evidence outside of the testimony provided by the accomplice to specifically connect [defendant] to [victim's] murder," and therefore the defendant could not satisfy the plain-error requirements); *Huff*, 300 Ga. at 810 (2) (holding that, even if the absence of the accomplice-corroboration instruction, "given the quantum

For all these reasons, we affirm MacMillan's convictions.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

of evidence, combined with the fact that the instruction was *incomplete* rather than overtly incorrect, [the defendant could not] show that the instruction likely affected the outcome of the proceedings); *see also See Kelly*, 290 Ga. at 32 (2) (a) (explaining that under the third prong of the plain-error analysis, "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings" (punctuation omitted)); *Roundtree*, 358 Ga. App. at 145-46 (2) ("[R]eversal based on plain error is authorized only if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."(punctuation omitted)).